**Opinion issued July 22, 2014**



In The

# Court of Appeals

For The

# First District of Texas

—————————

## NO. 01-13-00493-CR

—————————

**RYAN MATTHEW STAIRHIME, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Case No. 1387371**

---

## O P I N I O N

Appellant, Ryan Matthew Stairhime, was charged by indictment with murder.[1] Appellant pleaded not guilty. The jury found him guilty and assessed punishment at forty-three years' confinement. In four issues on appeal, Appellant

---

[1]    *See* TEX. PENAL CODE ANN. § 19.02(b) (Vernon 2011).

challenges the trial court's (1) permitting the State to impeach the testimony of a witness to the incident, (2) excluding his impeaching evidence of the same witness, (3) failure to include in the application portion of the jury charge a definition present in the abstract portion of the jury charge, and (4) restriction of his voir dire examination.

We affirm.

## Background

Appellant was out with his girlfriend, Kelsey Wright, on July 18, 2010. After seeing texts on Wright's phone that Appellant considered flirtatious, the two got in an argument. The argument escalated and culminated in the parking lot of a Wal-Mart. Wright called her close friend and former boyfriend, Stephen Babb, to pick her up. She crossed the street and waited for Babb at a gas station.

When Babb arrived, Wright got in his truck and explained to him what had happened. While the two were talking, Appellant walked up to the truck. Babb rolled down the window, and Appellant reached in, stabbing Babb in the side of the chest. Appellant then fled. Babb got out of the truck and rested on the ground beside the truck. Wright stayed next to him. Babb eventually lost consciousness. He died shortly after arriving at a hospital.

During voir dire at trial, Appellant's counsel asked the jury some questions about Appellant's right to not testify at trial. The State objected to the form of

2

some of these questions. The trial court sustained the objections and instructed Appellant's counsel to rephrase the questions. Once the jury was selected, the trial court asked the parties, "Does either side have an objection to the panel or as to the jury as selected?" Both Appellant and the State responded, "No, Your Honor."

During the State's examination of Wright, the prosecutor questioned her about a plan Appellant developed with her to falsify her statements about what happened prior to the stabbing. Under this plan, Wright agreed to tell the investigator for Appellant that Babb had assaulted her while she was in his truck and that Appellant's actions were in response to this. Wright did tell this to Appellant's investigator, but later reverted back to reporting that Appellant had assaulted her and that Babb never did.

During the State's examination of Wright about her agreement with Appellant to change her account of events, Appellant objected. Appellant argued that the testimony did not meet the requirements for introducing evidence of a prior inconsistent statement and that the testimony was more prejudicial than probative. The State argued that the conversations between Wright and Appellant about changing her account of the events leading up to the stabbing were admissible as an admission of a party opponent. It argued that any other testimony about her prior inconsistent statement met the requirements for admission. The trial court overruled Appellant's objections.

During Appellant's cross-examination of Wright, he attempted to question her about three Facebook posts alleged to have been posted by Wright. The State objected to the relevance of the posts, and the trial court sustained the objection. Later, Appellant called Ashley O'Brien as a witness. O'Brien had been friends with Wright on Facebook and had obtained the images of Wright's alleged Facebook posts. When Appellant offered the exhibits containing the images of the posts, the State objected on hearsay grounds. The trial court sustained these objections. Appellant later made an offer of proof for the exhibit and O'Brien's testimony concerning how she obtained the image on the exhibit.

The first image is an alleged post from Wright announcing her intention to be completely sober from "[a]lcohol, cigarettes, and any other bad habits I have gotten myself into" for thirty days. The post was dated June 17, 2012. The testimony that Appellant claims the post could have impeached was Wrights' testimony that she had taken drugs the night of the incident (July 17, 2010) but that, as of the time of her testimony at trial (May 29, 2013), she was no longer taking drugs.

The next image contains two posts. One post is a picture of Wright and Babb together. The post also contains the following text: "I'm doing this for you today. I will do my best to speak for you and let shit head get what he deserves. I hope I don't let you down. I love you and I hope you continue to watch over me."

4

The other post is an image of a tattoo of a pair of boots. Any text associated with the post is not included in the image. Text to the right of the image, however, states that the tattoo is in memory of Babb.

During the charge conference, the State sought an instruction on the offense of deadly conduct. Appellant's theory of the case at trial was self-defense and defense of a third person. The State argued that the evidence showed that Appellant was committing the offense of deadly conduct immediately before he attacked Babb. Because he was committing a legal offense, the State argued, he would have had the duty to retreat before he could claim self-defense or defense of a third person.

Appellant objected to the inclusion of an instruction on deadly conduct. The trial court overruled the objection and granted the State's request. The jury charge includes a definition of deadly conduct in the abstract portion of the charge for the offense of murder. The charge does not, however, apply the offense of deadly conduct to any of the application portions of the charge.

## Impeachment

In his first issue, Appellant argues the trial court abused its discretion by overruling his objection to the State's examination of a witness about a prior inconsistent statement. In his second issue, Appellant argues the trial court abused its discretion by excluding his proffered impeachment evidence.

## A. Standard of Review

We review the trial court's evidentiary rulings for an abuse of discretion. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006); *Walker v. State*, 321 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2009, pet. dism'd). Unless the trial judge's decision was outside the "zone of reasonable disagreement," we will uphold the ruling. *Oprean*, 201 S.W.3d at 726; *Walker*, 321 S.W.3d at 22.

## B. State's Examination

During the State's examination of Wright, the prosecutor questioned her about a plan Appellant developed with her to falsify her statements about what happened prior to the stabbing. Under this plan, Wright agreed to tell Appellant's investigator that Babb had assaulted her while she was in his truck and that Appellant's actions were in response to this. Wright did tell this to Appellant's investigator, but later reverted back to reporting that Appellant had assaulted her and that Babb never did.

During the State's examination of Wright about her agreement with Appellant to change her account of events, Appellant objected. Appellant argued that the testimony did not meet the requirements for introducing evidence of a prior inconsistent statement under rule 613 of the Texas Rules of Evidence. *See* TEX. R. EVID. 613(a). Appellant also argued that the testimony was more prejudicial than probative under rule 403. *See* TEX. R. EVID. 403.

6

The State argued that the conversations between Wright and Appellant about changing her account of the events leading up to the stabbing were admissible as an admission of a party opponent. *See* TEX. R. EVID. 801(e)(2). It argued that any other testimony about her prior inconsistent statement met the requirements of rule 613. *See* TEX. R. EVID. 613(a). The trial court overruled Appellant's objections.

Rule 613(a) established the requirements admitting into evidence the contents of a prior inconsistent statement made by the testifying witness. *Id.* It specifically provides, however, that the "provision does not apply to admissions of a party-opponent as defined in Rule 801(e)(2)." *Id.* As it applies to this case, a statement is an admission of a party opponent if it is (1) offered against a party and (2) the party's own statement. TEX. R. EVID. 801(e)(2)(A). An admission of a party opponent does not constitute hearsay. TEX. R. EVID. 801(e)(2).

The State elicited testimony from Wright about conversations she had with Appellant about changing her account of the events leading up to the stabbing. Wright testified that Appellant was urging her to say that Babb assaulted her so that he could assert the affirmative defense of defense of a third person. *See* TEX. PENAL CODE ANN. § 9.32 (Vernon 2011). These statements were made by Appellant and offered against him. *See* TEX. R. EVID. 801(e)(2)(A). Accordingly, they constitute an admission of a party opponent. *See id.* Because they are an

7

admission of a party opponent, they do not implicate rule 613. *See* TEX. R. EVID. 613(a) (excepting rule's application to admission of party opponent).

The remainder of Wright's testimony on the topic concerns her statements to Appellant's investigator. Rule 613(a) prevents the admission of a prior inconsistent statement unless certain criteria are met. *Id.* If the witness unequivocally admits to making the prior inconsistent statement, extrinsic evidence of the statement is inadmissible. *Id.* Here, the recording of Wright's statement was never offered, let alone admitted, into evidence. Accordingly, there is no violation of rule 613. *See id.*

Appellant also objected to Wright's testimony about her conversation with Appellant about changing her account of events based on rule 403. Rule 403 excludes the admission of evidence when the probative value of the evidence is substantially outweighed by its prejudicial effect. TEX. R. EVID. 403. "The rule gives the trial court considerable latitude to assess the courtroom dynamics, to judge the tone and tenor of the witness[es]' testimony and its impact upon the jury, and to conduct the necessary balancing." *Winegarner v. State*, 235 S.W.3d 787, 791 (Tex. Crim. App. 2007).

Appellant argues the testimony was substantially more prejudicial than probative because he asserts the State was attempting to "use the cover of

8

impeachment to place before the jury otherwise inadmissible evidence." Because we have not held that the evidence was otherwise inadmissible, this argument fails.

We overrule Appellant's first issue.

## C.    Appellant's Impeachment Evidence

During Appellant's cross-examination of Wright, he attempted to question her about three Facebook posts allegedly posted by her. The State objected to the relevance of the posts, and the trial court sustained the objection. Later, Appellant called O'Brien as a witness. O'Brien had been friends with Wright on Facebook and had obtained the images of Wright's alleged Facebook posts. When Appellant offered the exhibits containing the images of the posts, the State objected on hearsay grounds. The trial court sustained these objections. Appellant later made an offer of proof for the exhibit and O'Brien's testimony concerning how she obtained the image on the exhibit.

Appellant argues the exhibit should have been admitted as impeachment evidence against Wright. The first image is an alleged post from Wright announcing her intention to be completely sober from "[a]lcohol, cigarettes, and any other bad habits I have gotten myself into" for thirty days. The post was dated June 17, 2012. Appellant alleges the post "could be used to attack Ms. Wright's credibility as a prior inconsistent statement when she claimed to no longer be using drugs." The testimony that Appellant claims the post could have impeached was

9

Wright's testimony that she had taken drugs the night of the incident (July 17, 2010) but that, as of the time of her testimony at trial (May 29, 2013), she was no longer taking drugs. Appellant argues the post constitutes proof of a prior inconsistent statement. *See* TEX. R. EVID. 613(a).

We agree with the State that there is no inconsistency between the post and Wright's testimony. Wright testified that she had taken drugs on July 17, 2010. She also testified during trial on May 29, 2013 that she was no longer taking drugs. There is no inconsistency between these statements and Wright's alleged post on June 17, 2012 announcing an intention to be completely sober for thirty days. Accordingly, it was not admissible as a prior inconsistent statement.

The next image contains two posts. One post is a picture of Wright and Babb together. The post also contains the following text: "I'm doing this for you today. I will do my best to speak for you and let shit head get what he deserves. I hope I don't let you down. I love you and I hope you continue to watch over me." The other post is an image of a tattoo of a pair of boots. Any text associated with the post is not included in the image. Text to the right of the image, however, states the tattoo is in memory of Babb.

Appellant argues that the alleged post about Wright's intent "to speak for" Babb is evidence of bias and "could be viewed by the jury as a promise to the memory of Stephen Babb to do whatever it took, even lying about the event of that

10

night, to convict" Appellant. We disagree with Appellant that a declared intent to "do [her] best to speak for" Babb and to "let [Appellant] get what he deserves" evinces an intent to commit perjury. While we do agree that the post is some evidence of bias, we hold there was no error in its exclusion.

"The erroneous exclusion of evidence offered under the rules of evidence generally constitutes non-constitutional error and is reviewed under Rule 44.2(b)." *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007). We must disregard non-constitutional error that does not affect an appellant's substantial rights. *See* TEX. R. EVID. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . ."); TEX. R. APP. P. 44.2(b) ("Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). Substantial rights are not affected by the erroneous exclusion of evidence "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (footnotes omitted). If the evidence is generally cumulative of other evidence introduced in the case, no harm attaches. *See Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986) (holding that to show harm, excluded evidence must be controlling on material issue and not cumulative of other evidence); *see also Rangel v. State*, 179 S.W.3d 64, 70 (Tex. App.—San Antonio

11

2005, pet. ref'd) (holding no harm when complained-of excluded evidence was admitted through other testimony).

As the State points out, there was already ample evidence in the record of bias. Wright testified that she had dated Babb for two years. Even after dating, they remained friends. Wright testified that she and Babb continued to have a strong relationship. She loved him and considered him one of her best friends. She saw Appellant stab Babb. She stayed with Babb as he slowly lost consciousness and later died. We hold there was evidence of bias in the record without the admission of the alleged Facebook post. Because the Facebook post was cumulative, Appellant was not harmed by its exclusion. *See Anderson*, 717 S.W.2d at 628; *see also* TEX. R. EVID. 613(b) ("If the witness unequivocally admits such bias or interest, extrinsic evidence of same shall not be admitted").

We overrule Appellant's second issue

**Jury Charge**

In his third issue, Appellant argues the trial court committed fundamental error by including the definition of "deadly conduct" in the abstract portion of the jury charge but not using it in the application section of the charge.

**A.    Standard of Review & Applicable Law**

Appellate courts undertake a two-step process in reviewing allegations of jury charge error. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986)

12

(citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)).  First we determine whether error exists in the charge.  *Id.*  Second, we determine whether the level of harm stemming from the error requires reversal.  *Id.*  When, as here, there was no objection to the error, "the error must have been so harmful that the defendant was denied 'a fair and impartial trial,'" known as "actual 'egregious' harm."  *Id.* (quoting *Almanza*, 686 S.W.2d at 171).

**B.    Analysis**

Appellant's theory of the case at trial was self-defense and defense of a third person.  During the charge conference, the State sought an instruction on the offense of deadly conduct.  *See* TEX. PENAL CODE ANN. § 22.05 (Vernon 2011).  The State argued that the evidence showed that Appellant was committing the offense of deadly conduct immediately before he attacked Babb.  Because he was committing a legal offense, the State argued, he would have had the duty to retreat before he could claim self-defense or defense of a third person.

Appellant objected to the inclusion of an instruction on deadly conduct.  The trial court overruled the objection and granted the State's request.  The jury charge includes a definition of deadly conduct in the abstract portion of the charge for the offense of murder.  The charge does not, however, apply the offense of deadly conduct to any of the application portions of the charge.  On appeal, Appellant argues that failure to apply deadly conduct in any of the application sections

13

caused him egregious harm because "the charge effectively alleged an uncharged offense with a lowered standard of intent and no instructions to the jury on how to consider the defined charge."

"It is the application paragraph of the charge, not the abstract portion, that authorizes a conviction." *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). If a charge on a theory of law is present in the abstract portion of the charge but not in the application portion, the jury is not authorized to convict upon that theory. *Id.* We presume the jury understood and followed the application portion of the court's charge absent evidence to the contrary. *Id.* at 467. As a result, "reversible error occurs in the giving of an abstract instruction only when the instruction is an incorrect or misleading statement of a law that the jury must understand in order to implement the commands of the application paragraph." *Id.* at 466.

Deadly conduct was correctly defined in the abstract portion of the charge concerning the offense of murder. As Appellant points out, however, the definition of deadly conduct was never applied in any of the application sections in the charge. It was also not necessary to understand in order to implement any of the commands in any of the application paragraphs. Accordingly, there is no reversible error in its inclusion in the charge. *See id.* (holding reversible error for instructions appearing only in abstract portion of charge only when instruction is

14

incorrect or misleading and when jury needed to understand it in order to implement instructions in application paragraph).

Appellant argues the extraneous instruction "effectively impl[ied] to the jury that they could find [Appellant] guilty of murder" with a lessened intent standard. There is no support for this argument in the record. The jury was not authorized to convict on a theory that was not present in the application portions of the charge, and we presume the jury understood and followed the instructions in the application portion. *Id.* at 466–67. Appellant has not presented any argument or evidence to overcome this presumption. Accordingly, the presumption stands.

Appellant's reliance on *Doyle* is misplaced. *See Doyle v. State*, 631 S.W.2d 732, 737 (Tex. Crim. App. 1980). In *Doyle*, the Court held that, if an abstract definition of the charge offense included alternative elements to the offense but each of those alternative offenses were not included in the application paragraph, "[i]t would truly be fundamental error if this Court were to permit a conviction to stand." *Id.* In the present case, however, we are not dealing with alternative elements to a single charged offense. In fact, we are not dealing with another charged offense or an offense that either party requested to be included as a lesser included. Instead, the State had wanted to apply deadly conduct as a manner of establishing that Appellant had a duty to retreat before he could assert a claim of self-defense or defense of a third person. Because deadly conduct was never

15

applied, the jury was never authorized to use it to determine that Appellant was required to retreat first. Accordingly, the error benefitted Appellant instead of harming him.

We overrule Appellant's third issue.

## Voir Dire

In his fourth issue, Appellant argues the trial court abused its discretion by preventing Appellant from asking the jury questions concerning his right to not testify. The State argues Appellant waived any error. We agree.

"[G]enerally, an affirmative statement of 'no objection' waives any error relating to that matter." *Harrison v. State*, 333 S.W.3d 810, 812 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). As a result, any complaints about the conduct of voir dire are waived if the appellant states he has no objection to the seating of the jury. *Id.* at 812–13.

Here, at the end of voir dire, the trial court asked, "Does either side have an objection to the panel or as to the jury as selected?" Both Appellant and the State responded, "No, Your Honor." We hold Appellant has waived any error related to the conduct of voir dire.

We overrule Appellant's fourth issue.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Justice Brown, concurring in part.

Publish. TEX. R. APP. P. 47.2(b).