FILED IN
COURT OF CRIMINAL APPEALS

December 18, 2015

ABEL ACOSTA, CLERK

PD-1458-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/16/2015 9:14:29 AM
Accepted 12/18/2015 11:48:28 AM
ABEL ACOSTA
CLERK

**PD 1458-15**

# IN THE COURT OF CRIMINAL APPEALS

## OF TEXAS

_____

**RYAN MATTHEW STAIRHIME,**
*Appellant*,

**v.**

**THE STATE OF TEXAS,**
*Appellee.*

_____

On Petition for Discretionary Review from the First Court of Appeals in No. 01-13-00493-CR affirming the conviction in cause number 1387371, From the 177th District Court of Harris County, Texas

_____

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
_____

ORAL ARGUMENT IS NOT REQUESTED

**ALEXANDER BUNIN**
Chief Public Defender
Harris County, Texas

**JANI MASELLI WOOD**
Assistant Public Defender
Harris County, Texas
TBN. 00791195
1201 Franklin Street, 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278

Counsel for Appellant

December 14, 2015

## IDENTITY OF PARTIES AND COUNSEL

APPELLANT:

Ryan Matthew Stairhime
TDCJ# 01867869
Gurney Unit
1385 FM 3328
Palestine, TX 75803

TRIAL PROSECUTOR:

Mia Magness
Assistant District Attorney
Harris County, Texas
1201 Franklin, 6th Floor
Houston, Texas 77002

DEFENSE COUNSEL AT TRIAL:

James Tucker Graves
306 main Street
Houston, TX 77002

Daniel Shaw Clifford
8100 Washington, Suite 250
Houston, TX 77007

PRESIDING JUDGE:

Hon. Ryan Patrick
177th District Court
Harris County, Texas
1201 Franklin, 19th floor
Houston, Texas 77002

DEFENSE COUNSEL ON APPEAL:

Jani Maselli Wood
Assistant Public Defender
Harris County, Texas
1201 Franklin, 13th Floor
Houston, Texas 77002

# **TABLE OF CONTENTS**

**PAGE**

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Index of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Statement of Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Ground for Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Reason for Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Argument

      The defense was precluded from asking an entirely proper question during voir dire. On remand from this Court, the Court of Appeals determined that Mr. Stairhime *was* allowed to ask the question after the State's objections were erroneously sustained. However, the question Mr. Stairhime was allowed to ask was substantively different than the previous question. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      Did the Court of Appeals err in holding that Mr. Stairhime's substantial rights were not affected?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      Did the Court of Appeals err in holding the error almost "moot" because Mr. Stairhime ultimately ended up testifying?. . . . . . . . . . . . . . . . 17

Prayer for Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Appendix . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Attached

INDEX OF AUTHORITIES

PAGE

**Cases**:

*Goodspeed v. State*,
  187 S.W.3d 390 (Tex. Crim. App.2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Stairhime v. State*,
  463 S.W.3d 902 (Tex. Crim. App. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Stairhime v. State*,
  01-13-00493-CR, 2015 WL 6081596
  (Tex. App.—Houston [1st Dist.] Oct. 15, 2015, no. pet. h.) . . . . . . . . . 6, 15

*Stairhime  v. State*,
  439 S.W.3d 499 (Tex. App. – Houston [1st Dist.] 2014). . . . . . . . . . . . . . . 6

**Statutes, Rules, and Miscellaneous**

TEX. CODE CRIM. P. ART. 35.16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TEX. PENAL CODE ANN. § 19.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

 TEX. R. APP. P. 66.3(F) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Roxanne Barton Conlin & Gretchen Jenson, *What, Me? Prejudiced? Absolutely Not!*, Trial
20, 21 (Dec. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

http://www.pewresearch.org/methodology/u-s-survey-research/questionnaire-design
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

http://stattrek.com/statistics/dictionary.aspx?definition=Response%20bias. . . 16

STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not requested.

STATEMENT OF THE CASE

This is an appeal from the felony offense of murder. (C.R. at 261). *See* TEX. PENAL CODE ANN. § 19.02. Mr. Stairhime pleaded not guilty and a jury convicted him and sentenced him to 43 years confinement in the Institutional Division of the Texas Department of Criminal Justice. (C.R. at 261). Timely notice of appeal was filed. (C.R. at 266).

STATEMENT OF THE PROCEDURAL HISTORY

In a published opinion, on first review, the First Court of Appeals affirmed Mr. Stairhime's conviction. *Stairhime v. State*, 439 S.W.3d 499 (Tex. App. – Houston [1st Dist.] 2014, pdr granted). This Court granted the PDR and reversed the Court of Appeals. *Stairhime v. State*, 463 S.W.3d 902 (Tex. Crim. App. 2015). On remand, the First Court of Appeals again affirmed the conviction in an unpublished case. *Stairhime v. State*, 01-13-00493-CR, 2015 WL 6081596, at *1 (Tex. App.—Houston [1st Dist.] Oct. 15, 2015, no. pet. h.) No motion for rehearing was filed. This petition for discretionary review is timely filed if filed on or before December 16, 2015.

GROUND FOR REVIEW

The defense was precluded from asking an entirely proper question during voir dire. On remand from this Court, the Court of Appeals determined that Mr. Stairhime *was* allowed to ask the question after the State's objections were erroneously sustained. However, the question Mr. Stairhime was allowed to ask was substantively different than the previous question.

Did the Court of Appeals err in holding that Mr. Stairhime's substantial rights were not affected?

Did the Court of Appeals err in holding the error almost "moot" because Mr. Stairhime ultimately ended up testifying?

REASON FOR REVIEW

The First Court of Appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of this Court's power of supervision . TEX. R. APP. P. 66.3(F).

STATEMENT OF FACTS RELATIVE TO GROUND RAISED

*Voir Dire*

During voir dire, the defense posed a question to the entire panel regarding whether they would be biased against Mr. Stairhime if he did not testify, and polled the panel individually for their answers (2 R.R. at 148-158). The following questions were asked regarding whether or not the jury would hold it against Mr. Stairhime if he did not testify:

MR. GRAVES:    What I want to know, if Ryan does not take the stand, are you going to use that as evidence of guilt? In other words, do you have to hear from him?

VENIREPERSON:    No, I don't.

MR. GRAVES:    Juror No. 2?

VENIREPERSON:    No.

MR. GRAVES:    Juror No. 3?

VENIREPERSON:    Yes, I would like to hear from him.

MR. GRAVES:    We all would like to.

VENIREPERSON:    Okay. Yeah.

MR. GRAVES:    I think we're all in agreement we would like to hear from the defendant, right? Okay. And that's fair. That's human nature.

VENIREPERSON:    So you're asking if we don't hear from him, are we going to hold that against him?

MR. GRAVES:    Exactly.  In other words, do you have to hear from [Mr. Stairhime] to be a fair juror?

MS. MAGNESS:    Judge, I'm going to object to the form of the question.

THE COURT:      Sustained.

MR. GRAVES:     I'll rephrase it.

THE COURT:      Before you answer, sir, go ahead and rephrase that question, Mr. Graves.

MR. GRAVES:     Okay. I will. If Ryan refuses to testify, can you put that aside, out of your mind and be fair?

MS. MAGNESS:    I'm going to object again to the form of the question.

THE COURT:      Sustained.

MR. GRAVES:     Do you have to hear from the defendant?

MS. MAGNESS:    Again, I object to the form of the question. It's whether or not they would use it as evidence of his guilt.

THE COURT:      Sustained.

MR. GRAVES:     Are you going to use it as evidence of his guilt if he does not testify?

VENIREPERSON:         Yes.

(2 R.R. at 149). The trial court thus effectively restricted Mr. Graves to asking a question regarding whether jurors could follow the law in regard to Mr. Stairhime's

-8-

right to not testify, preventing him from asking the rest of the panel his proper question regarding juror bias against Mr. Stairhime if he did not testify.

*The Incident*

On the night of July 17, 2010, Ryan Stairhime picked up his girlfriend at the time, Kelsey Wright, to take her to a get-together at a friend's house (6 R.R. at 42-44). The two joined friends in the front yard of the house, where they sat and drank rum and bourbon for much of the night (6 R.R. at 44). At some point, the group also smoked approximately two marijuana joints between them (6 R.R. at 45). Unbeknownst to Ryan, Kelsey had also used methamphetamine that night before he picked her up (4 R.R. at 226).

After midnight, Ryan returned to his car to retrieve his cigarettes (6 R.R. at 46). While inside the car, he saw Kelsey's cell phone light up with a suggestive text message from another man (6 R.R. at 46-47, 60). Ryan and Kelsey already had trust issues in their relationship, as Ryan had "well-sustained evidence" that Kelsey had cheated on him previously, and Kelsey maintained a close relationship with her ex-boyfriend, Stephen Babb, potentially even cheating on Ryan with him (6 R.R. at 46-48). Ryan and Stephen had several run-ins in the past, with Stephen attempting to run Ryan and a friend off the road, and drunkenly banging on Ryan and Kelsey's apartment door late at night (6 R.R. at 27, 49-56). Angry, intoxicated, and betrayed,

Ryan confronted Kelsey and they began to argue on the front lawn (6 R.R. at 60-61). A frustrated Ryan decided it was time for the night to end, and proceeded to take Kelsey home (6 R.R. at 62).

The argument continued in the car, escalating in volume as Kelsey screamed at Ryan, and he yelled back at her (6 R.R. at 62-63). Distracted by the argument, Ryan hit a pothole, damaging the car, and sending the right side of Kelsey's face crashing into the windshield (4 R.R. at 147). Ryan was forced to pull over into a nearby Wal-Mart parking lot (4 R.R. at 147; VI R.R. at 63-64, 66). At this point events become unclear-Kelsey claimed that Ryan hit her on the right side of her face (4 R.R. at 138, 146, 210-11), while Ryan insisted that Kelsey began hitting him, and he attempted to fend her off, possibly knocking her in the process (6 R.R. at 63). Ryan and Kelsey got out of the car, and Ryan called his brother, Wesley, for help (6 R.R. at 67). Knowing it would be some time before his brother arrived, Ryan decided to leave, walking away from the car and Kelsey in an attempt to clear his head in the interim (4 R.R. at 152; 6 R.R. at 67). Kelsey tried to follow, blocking his way and insisting they continue the argument (6 R.R. at 67-69), until Ryan, fed up, grabbed her and moved her out of his way, causing her to fall (6 R.R. at 69; 4 R.R. at 150-51).

Kelsey finally decided to go home, and called the complainant Stephen Babb to come pick her up at an Exxon station across the intersection from the Wal-Mart

at close to 3:00 a.m. on the morning of July 18th (4 R.R. at 152). She began to walk towards the Exxon, but before she arrived, she encountered Wesley's girlfriend, Ann Marie Montoya (Annie), who gave her a ride to the station and waited with her until Stephen arrived (4 R.R. at 154-55). Annie returned to where Ryan and Wesley were examining the car, and informed them that Stephen had arrived to pick Kelsey up (5 R.R. at 56). Ryan-already angry and betrayed, feeling like his "whole world that I just two years spent, three years spent, was just crumbling, falling apart," headed toward the Exxon parking lot to confront the pair (6 R.R. at 73-74).

The chain of events is unclear at this juncture. Kelsey claimed she was sitting in the truck with Stephen while he consoled her when Ryan approached, and, after a brief exchange of words, Ryan struck at Stephen, who struck back as if they were fist-fighting (4 R.R. at 158-64). According to Ryan, he approached the truck and spoke to Kelsey, who responded angrily, at which point Stephen slapped Kelsey and told her to "shut the fuck up" (6 R.R. at 75), and made a threatening comment to Ryan (6 R.R. at 76-77). Ryan had seen the fear on Kelsey's face before when they encountered Stephen at a restaurant (6 R.R. at 58-59), and had heard stories from Kelsey about Stephen's "bad side," and how much she "hated Stephen" (4 R.R. at 127-28). Now Ryan was stunned and afraid for his girlfriend and himself (6 R.R. at

80-83). Ryan saw Stephen reach for something, and, assuming it was a weapon, acted on impulse out of fear for his and Kelsey's safety (6 R.R. at 79-80).

Where the versions converge is that, during the altercation between Ryan and Stephen at the truck, Ryan pulled his pocketknife from his belt and stabbed Stephen (4 R.R. at 164-65; 6 R.R. at 79, 81-83). Ryan then left the scene with Wesley and Annie in their car (4 R.R. at 165; 6 R.R. at 83). Ryan turned himself in the next day (6 R.R. at 86-87). He was formally charged with murder (C.R. at 8-9, 13).

## ARGUMENT

The defense was precluded from asking an entirely proper question during voir dire. On remand from this Court, the Court of Appeals determined that Mr. Stairhime *was* allowed to ask the question after the State's objections were erroneously sustained. However, the question Mr. Stairhime was allowed to ask was substantively different than the previous question.

Did the Court of Appeals err in holding that Mr. Stairhime's substantial rights were not affected?

Did the Court of Appeals err in holding the error almost "moot" because Mr. Stairhime ultimately ended up testifying?

| **Questions not allowed** | **Questions Allowed** |
|---|---|
| In other words, do you have to hear from [Mr. Stairhime] to be a fair juror? | What I want to know, if Ryan does not take the stand, are you going to use that as evidence of guilt? In other words, do you have to hear from him? |
| If Ryan refuses to testify, can you put that aside, out of your mind and be fair? | Are you going to use it as evidence of his guilt if he does not testify? |
| Do you have to hear from the defendant? | |

Did the Court of Appeals err in holding that Mr. Stairhime's substantial rights were not affected?

The Court of Appeals determined that "Appellant's questioning about his right to remain silent was restricted only as to its form. Appellant was ultimately allowed to ask the prospective jurors if they would use his failure to testily as proof of guilt." *Stairhime v. State*, 01-13-00493-CR, 2015 WL 6081596, at *3 (Tex. App.—Houston [1st Dist.] Oct. 15, 2015, no. pet. h.). This determination presupposes that the exact same questions were asked. That is not the case.

The questions were actually significantly different. Mr. Stairhime's attorney was attempting to determine fairness - and the inquiry allowed related only to evidence. Determining whether a juror can be fair is a proper question under the law:

> (a) A challenge for cause is an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury. A challenge for cause may be made by either the state or the defense for any one of the following reasons:
>
> > 9. That the juror has a bias or prejudice in favor of or against the defendant;

TEX. CODE CRIM. P. ART. 35.16.

Although the questions were assumed to be the same by the Court of Appeals - there is a difference:

> The choice of words and phrases in a question is critical in expressing the meaning and intent of the question to the respondent and ensuring

that all respondents interpret the question the same way. Even small wording differences can substantially affect the answers people provide.

http://www.pewresearch.org/methodology/u-s-survey-research/questionnaire-design/(last logged in 12/12/2015). There is a distinct difference between whether someone can be fair versus whether they will use something as evidence. The answers could be very different:

Response Bias

In survey sampling, response bias refers to the bias that results from problems in the measurement process.

\* \* \* \*

Social desirability. Most people like to present themselves in a favorable light, so they will be reluctant to admit to unsavory attitudes or illegal activities in a survey, particularly if survey results are not confidential. Instead, their responses may be biased toward what they believe is socially desirable.

http://stattrek.com/statistics/dictionary.aspx?definition=Response%20bias (last logged in 12/12/2015). Being allowed to ask whether jurors will be fair would have allowed the defense to see whether or not jurors would admit their biases or prejudices:

Almost no one thinks he or she is prejudiced. In fact, we all are. Jury selection must be conducted in a way that reveals the subtle and not-so-subtle biases held by the members of the venire. Jury selection is a crucial element in achieving a fair result for your client. Without an impartial jury, the best representation and facts may not win the case.

Roxanne Barton Conlin & Gretchen Jenson, *What, Me? Prejudiced? Absolutely Not!*, Trial 20, 21 (Dec. 2000).

> Did the Court of Appeals err in holding the error almost "moot" because Mr. Stairhime ultimately ended up testifying?

Additionally, the Court of Appeals also held "any error was, if not rendered moot, severely diminished by Appellant's decision to testify." *Stairhime*, 2015 WL 6081596, at *4. This assumes that the limitation of voir dire did not directly affect the decision as to whether Ryan should testify or not. The defense questioned at length about this issue - only to be thwarted. Specifically, the defense told the jury: "I think we're all in agreement we would like to hear from the defendant, right? Okay. And that's fair. That's human nature." (2 R.R. at 148). If the defense strategy had been for Mr. Stairhime to testify all along - the defense surely would have told the jury that he was going to testify. Instead, the defense asked extensive questions about the fact he was *not* going to testify. The Court of Appeals determination that this diminishes the harm is inapposite from what most likely happened. The defense was precluded from asking whether the jurors could be fair - he was denied that basic question. This might have been the very reason the defense felt that Mr. Stairhime needed to testify.

When evaluating claims of ineffective assistance of counsel, courts unilaterally reject claims when the record is "silent." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.Crim.App.2005). Similarly, the Court of Appeals determining the issue is moot

-16-

is based upon a silent record. There may or may not have been a strategy decision based upon the erroneous trial court rulings during voir dire. There is no way to know from the silent record whether or not the defense strategy had to change. The Court of Appeals erred in basing part of its decision on a silent record.

Review should be granted.

PRAYER FOR RELIEF

For the reasons states above, Mr. Stairhime prays that this Court grant his petition.

Respectfully submitted,

*Jani Maselli Wood*

_____

JANI J. MASELLI WOOD
Assistant Public Defender
Harris County, Texas
Jani.Maselli@pdo.hctx.net
TBN. 00791195
1201 Franklin Street, 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278

Attorney for Appellant
Ryan Matthew Stairhime

CERTIFICATE OF SERVICE

Pursuant to Tex. R. App. Proc. 9.5, this certifies that on December 14, 2015, a copy of the foregoing was emailed to Lisa McMinn, State Prosecuting Attorney, and the Harris County District Attorney's Office through texfile.com at the following address:

Alan Curry
Assistant District Attorney
1201 Franklin Street, 6th Floor
Houston, TX 77002
curry_alan@dao.hctx.net

Lisa McMinn
Lisa.McMinn@SPA.texas.gov

*Jani Maselli Wood*

_____

JANI J. MASELLI WOOD

## CERTIFICATE OF COMPLIANCE

Pursuant to proposed Rule 9.4(i)(3), undersigned counsel certifies that this petition complies with the type-volume limitations of TEX. R. APP. PROC. 9.4(I)(2)(D).

1.      Exclusive of the portions exempted by TEX. R. APP. PROC. 9.4 (I)(1), this petition contains 3304 words printed in a proportionally spaced typeface.

2.      This petition is printed in a proportionally spaced, serif typeface using Garamond 14 point font in text and Garamond 14 point font in footnotes produced by Corel WordPerfect software.

3       Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in *Tex. R. App. Proc. 9.4(j)*, may result in the Court's striking this brief and imposing sanctions against the person who signed it.

*Jani Maselli Wood*

_____

JANI J. MASELLI WOOD

# Appendix A

Opinion *Stairhime v. State*

2015 WL 6081596
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION AND
SIGNING OF OPINIONS.

DO NOT PUBLISH. TEX. R. APP. P. 47.2(B).

Court of Appeals of Texas,
Houston (1st Dist.).

Ryan Matthew Stairhime, Appellant
v.
The State of Texas, Appellee
NO. 01–13–00493–CR | Opinion issued October 15,
2015

On Appeal from the 177th District Court, Harris County,
Texas, Trial Court Case No. 1387371

Attorneys and Law Firms

Jani J. Wood, for Appellant.

Carol M. Cameron, Alan Curry, Devon Anderson, for State of
Texas.
Panel consists of Chief Justice Radack and Justices Higley
and Brown.

MEMORANDUM OPINION

Laura Carter Higley, Justice

*1 Appellant, Ryan Matthew Stairhime, was charged by
indictment with murder.[1] Appellant pleaded not guilty. The
jury found him guilty and assessed punishment at 43 years'
confinement. In his original brief, Appellant challenged the
trial court's (1) permitting the State to impeach the testimony
of a witness to the incident, (2) excluding his impeaching
evidence of the same witness, (3) failure to include in the
application portion of the jury charge a definition present in
the abstract portion of the jury charge, and (4) restriction of
his voir dire examination.

On original submission, we overruled all four issues.
*Stairhime v. State,* 439 S.W.3d 499, 504–07
(Tex.App.—Houston [1st Dist.] 2014, pet. granted)
(*Stairhime I* ). For the fourth issue, we held that Appellant
had waived any error related to the issue raised. *Id.* at 507.
Stairhime filed a petition for discretionary review of our
judgment with respect to the fourth issue, and the Texas Court
of Criminal Appeals granted it. *Stairhime v. State,* 463
S.W.3d 902, 903 (Tex.Crim.App.2015) (*Stairhime II* ). The
court reversed, holding the facts upon which we relied did not
support a determination of waiver. *Id.* at 908. The court has
remanded the case back to this Court for consideration of the
remaining arguments in Appellant's fourth issue. *Id.*

We affirm.

Background

The only issue remaining for review concerns the trial court's
restriction of Appellant's voir dire examination. *See id.*
Accordingly, we provide only the relevant information for
that issue.

Appellant and his girlfriend, Kelsey Wright, got into a heated
argument on July 18, 2010. Wright called a friend and former
boyfriend, Stephen Babb, to pick her up. When Babb arrived,
Appellant stabbed him in the chest and fled. Babb died, and
Appellant was charged with murder.

During voir dire at trial, Appellant's counsel began asking the
jury about Appellant's right not to testily at trial. The
following exchange occurred:

[DEFENSE COUNSEL]: Juror No. 1.

VENIREPERSON: What do you want to know? You want
to know how I feel about it?

[DEFENSE COUNSEL]: What I want to know, if Ryan
does not take the stand, are you going to use that as
evidence of guilt? In other words, do you have to hear from
him?

VENIREPERSON: No, I don't.

[DEFENSE COUNSEL]: Juror No. 2?

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works. 21

VENIREPERSON: No.

[DEFENSE COUNSEL]: Juror No. 3?

VENIREPERSON: Yes, I would like to hear from him.

[DEFENSE COUNSEL]: We all would like to.

VENIREPERSON: Okay. Yeah.

[DEFENSE COUNSEL]: I think we're all in agreement we would like to hear from the defendant, right? Okay. And that's fair. That's human nature.

VENIREPERSON: So you're asking if we don't hear from him, are we going to hold that against him?

[DEFENSE COUNSEL]: Exactly. In other words, do you have to hear from him to be a fair juror?

[PROSECUTOR]: Judge, Em going to object to the form of the question.

THE COURT: Sustained.

[DEFENSE COUNSEL]: I'll rephrase it.

THE COURT: Before you answer, sir, go ahead and rephrase that question, [DEFENSE COUNSEL].

*2 [DEFENSE COUNSEL]: Okay. I will.

If Ryan refuses to testify, can you put that aside, out of your mind and be fair?

[PROSECUTOR]: I'm going to object again to the form of the question.

THE COURT: Sustained.

[DEFENSE COUNSEL]: Do you have to hear from the defendant?

[PROSECUTOR]: Again, I object to the form of the question. It's whether or not they would use it as evidence of his guilt.

THE COURT: Sustained.

[DEFENSE COUNSEL]: Are you going to use it as evidence of his guilt if he does not testify?

VENIREPERSON: Yes.

Appellant's counsel then asked the remaining prospective jurors the same question. In total, ten prospective jurors said they would consider Appellant's failure to testily as evidence of guilt. Nine of them were struck for cause. The tenth was too far down the list of jurors to have a chance of being on the jury panel.

During the trial, Appellant testified, both in the guilt-innocence phase and in the punishment phase. In the guilt-innocence phase, Appellant admitted to stabbing Babb. Appellant testified that he saw Babb slap Wright. According to Appellant, Babb then threatened him and reached for something under his seat. Appellant claimed he became scared for himself and for Wright and attacked Babb as a result.

### Voir Dire

In his fourth issue, Appellant argues the trial court abused its discretion by preventing Appellant from asking the jury questions concerning his right not to testify.

In its opinion, the Court of Criminal Appeals clarified that the State had raised other arguments for finding waiver and that its opinion did not dispose of those. *Id.* at 908 n.3. We begin, then, by addressing the State's remaining waiver argument.

Appellant argues that the trial court denied him his right to ask the jury proper voir dire questions regarding Stairhime's

right to remain silent. The State argues that Appellant failed to preserve this issue because he did not object. In order to preserve a complaint for appellate review, the record must show that "the complaint was made to the trial court by a timely request, objection, or motion" and that the trial court ruled on the complaint. Tex.R.App. P. 33.1(a).

It is established in the record that the State objected multiple times to how Appellant's questions phrased the questions about Appellant's right to remain silent. The State appears to argue that, in order to preserve this issue for appeal, Appellant was required to object to the trial court's sustaining the State's objections. We find no justification for this argument. Rule 33.1 requires only that "the complaint was made." *Id.* The trial court sustained objections to Appellant's counsel's formulation of questions about the right to remain silent, requiring Appellant's counsel to reformulate the question. If these rulings were erroneous, then the trial court prevented Appellant from asking proper voir dire questions. This is Appellant's complaint on appeal. We hold it has been preserved.

The State also argues that the objections were raised only when Appellant's counsel was asking Prospective Juror Number Three questions. After that, Appellant's counsel asked the remaining prospective jurors the question in the form the trial court had permitted. The State indicates that, as a result, any error has only been preserved as it applies to this prospective juror and not to the panel as a whole. We disagree.

*3 For preservation of error over the admission of evidence, there is a general rule that the party must object each time the evidence is admitted. *Kelly v. State,* 321 S.W.3d 583, 598 (Tex.App.—Houston [14th Dist.] 2010, no pet.). When a trial court has just overruled the objection, however, the objecting party is not required to constantly repeat the objection when repeated objections would be futile. *Id.*; *see also Graham v. State,* 710 S.W.2d 588, 591 (Tex.Crim.App.1986) (holding complaining party is not required to make futile repeated objections once it is clear trial court has made testimony admissible); *Cardenas v. State,* 787 S.W.2d 160, 162 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd) (holding party is not required to make futile objections after trial court has just overruled valid objection). We see no reason to create a different rule here. If the trial court found the formulation objectionable for one prospective juror, there is no reason to conclude the trial court would have found it acceptable for any other prospective juror. Repeating the same excluded questions to all 100 prospective jurors would have been duplicative and futile. We hold the objection has been preserved for all prospective jurors.

Turning to the substance of the argument, we do not need to determine whether the trial court's rulings were actually erroneous. This is because, even assuming the rulings were erroneous, any error is harmless.

Even when a court finds error in a trial court's ruling, we must review the error for harm. *See* Tex.R.App. P. 44.2(a)–(b). In general, errors in criminal cases are divided between constitutional errors and non-constitutional errors. *See id.* For constitutional errors, "the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex.R.App. P. 44.2(a). For non-constitutional errors, any error "must be disregarded" unless the error affects Appellant's substantial rights. Tex.R.App. P. 44.2(b).

Appellant argues that the trial court's exclusion of his preferred form for questioning the prospective jurors about his right to remain silent is constitutional error. For support, Appellant relies on *Jones v. State,* 223 S.W.3d 379, 382–83 (Tex.Crim.App.2007), *rev'd Easley v. State,* 424 S.W.3d 535, 537, 541 (Tex.Crim.App.2014). Since Appellant wrote his brief, however, *Jones* has been overruled. *See Easley,* 424 S.W.3d at 537, 541.

In *Easley,* the Court of Criminal Appeals held that erroneously limiting a party's voir dire examination is non-constitutional unless the error "is so substantial as to warrant labeling the error as constitutional error." *Id.* at 541. Here, the restrictions involved the form of questions for one general topic: the right to remain silent. The trial court did not exclude questioning on this topic in its entirety, just in the form of the question. We hold that any error in this restriction is not so substantial as to warrant labeling the error as constitutional. *See id.*

For non-constitutional error, we must disregard the error unless the error affect's the party's substantial rights. Tex.R.App. P. 44.2(b). In determining whether an error affected a party's substantial rights, we must

> consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing

arguments, voir dire, and whether the State emphasized the error.

*Easley,* 424 S.W.3d at 542 (internal quotations omitted).

As we have noted, Appellant's questioning about his right to remain silent was restricted only as to its form. Appellant was ultimately allowed to ask the prospective jurors if they would use his failure to testify as proof of guilt. Ten of the prospective jurors said yes. Nine of those were struck for cause. The last had no chance of being on the panel.

*4 Significantly, Appellant testified at trial. Even assuming Appellant's other question formats could have elicited further bias against a defendant who does not testify, any error was, if not rendered moot, severely diminished by Appellant's decision to testify. The only party to emphasize the topic of the right to remain silent was Appellant. During closing argument, Appellant's counsel emphasized that Appellant took the stand. Specifically, his counsel argued, "One thing about Ryan, he took the stand. He wanted to. He's wanted to tell his side since this happened."

Finally, the weight of the evidence against him further diminishes any harm Appellant may have suffered. During his testimony, Appellant admitted to stabbing Babb. The main dispute between the parties involved whether Appellant acted in self-defense. Appellant was the only witness to present evidence suggesting he was acting in self-defense. The jury necessarily rejected this claim. Limitations on questions about the right to remain silent during voir dire were not likely to have impacted the jury's determination of credibility about self-defense when Appellant actually did testify.

Considering the record as a whole, we hold any error in the trial court's restrictions on questioning the prospective jurors about the right to remain silent did not affect Appellant's substantial rights. We overrule Appellant's fourth issue.

## Conclusion

We affirm the judgment of the trial court.

All Citations

Not Reported in S.W.3d, 2015 WL 6081596

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

-25-

Footnotes

1       *See* Tex. Penal Code Ann. § 19.02(b) (Vernon 2011).

**End of Document**                                © 2015 Thomson Reuters. No claim to original U.S. Government Works.