**Modified and Affirmed as Modified; Opinion Filed November 29, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-01184-CR

### KARL DAVIS BARNES, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the 204th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. F-1524402-Q

# MEMORANDUM OPINION

Before Justices Bridges, Fillmore, and Stoddart
Opinion by Justice Stoddart

Karl Davis Barnes pleaded guilty to the offense of continuous sexual assault of a child. The jury assessed punishment at ninety-nine years in prison. Barnes contends the trial court erred by denying his pretrial motion to suppress evidence obtained at the scene of his attempted suicide and in his later police interview. He also claims he received ineffective assistance of counsel, the trial court erred by overruling his hearsay objections to medical records, and the judgment should be reformed to reflect his plea of guilty.

We conclude any complaint about the trial court's ruling on the motion to suppress is not preserved for appeal, the record does not establish a claim of ineffective assistance of counsel, and the trial court did not abuse its discretion by overruling the hearsay objections. We modify

the trial court's judgment to reflect that appellant pleaded guilty and affirm the judgment as modified.

**BACKGROUND**

In August 2015, the nine-year old complainant, M.S., told his mother that Barnes, a friend who lived with the family, had sexually assaulted him. Detective Mark Sims was assigned to the case and arranged for a forensic interview of the child. Sims observed the interview in which M.S. described several incidents of sexual assault against him by Barnes over a period of several months. Sims then contacted Barnes for a voluntary interview. Barnes agreed and went to the interview on the morning of August 19, 2015. Sims obtained basic background information, then asked Barnes about the allegations of sexual assault by M.S. Barnes denied engaging in any criminal or inappropriate behavior. After about an hour, Barnes ended the interview and left voluntarily.

That afternoon, Sims obtained a warrant for Barnes's arrest and went to serve it at Barnes's parent's house, where Barnes was staying. In the meantime, Richardson police officers and firefighters had been called to the house because Barnes attempted to commit suicide by cutting his wrist. Barnes testified he also took six Tramadol pills during the attempt.

Officers found Barnes standing in the backyard of the house with family members. He was bleeding at the wrist but able to walk to the front yard where he received treatment from paramedics. The officers asked Barnes where the weapon he used was located. Barnes said he threw it in the bushes. The backyard was large and only partially fenced. Officer Buckland went into the backyard to secure the weapon and look for a suicide note, which was standard practice in apparent suicide cases. She found a chair, a pool of blood, and other items on the ground next to the chair. She also found a box cutter and medical shears, both of which had blood on them. She saw a folded piece of paper with the word "sin" written on it, apparently in blood, and an

open Bible with some loose paper "sticking out." She could see handwriting on the loose paper and started reading. It appeared to be a suicide note. She could not recall if any of the pages of the Bible were covering the note. Buckland read the first page of the note, then flipped it over to read the back of the page. She did not remove the note from the Bible and turned it over after reading the back. She concluded the note was more than a suicide note. In the note, Barnes admitted sexually assaulting M.S. and four other young boys. He addressed his family and asked for forgiveness. He also apologized to Sims for lying to him and wasting his time. A crime scene investigator took photographs of the scene, then removed the note from the Bible and photographed each page of the note. He then collected the items.

Barnes had been transported to the hospital when Sims arrived. Sims sent an officer to the hospital and instructed him to arrest Barnes when he was released. After his release, Barnes was arrested and taken to jail.

Later that day, Sims interviewed Barnes for the second time. Before warning him of his *Miranda*[1] rights, Sims asked Barnes some questions to determine his state of mind and whether he was under the influence of medications or substances that would prevent him from speaking or understanding the discussion. Sims testified Barnes did not appear to be under the influence of medications or other substances that would prevent him from understanding their discussion.

Sims asked Barnes what happened after he left the police department that morning. Barnes responded that he was tired of having "these thoughts." He's had "these feelings and urges" since he was seven and tried to kill himself so he "wouldn't be a strain on society. Even going to jail, I'm not afraid of going to jail, I'm, it's more or less being a strain on society, taxpayers, money. I don't want that." Sims then moved on to other topics and requested a DNA

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 479 (1966).

sample.  Sims asked him what types of urges he was having.  Barnes explained they were sexual urges with males.  Barnes agreed to give a DNA sample and Sims took a buccal swap of his cheek.

Sims read and gave Barnes a written copy of the *Miranda* warnings approximately ten minutes into the interview.  Barnes stated he understood each of his rights and signed a form indicating his understanding.  Afterwards, Barnes spoke with Sims for over two hours.  He never requested an attorney or to end the interview.  Sims testified that Barnes did not exhibit any mental instability or indication he was under the influence of any substance.  After giving the *Miranda* warnings, Sims did not re-ask the questions from before the warnings.  After receiving the warnings, Barnes discussed several specific acts of sexual assault of M.S. and other underage boys.

With one exception, the trial court denied Barnes's motion to suppress the suicide note and the recording of his second interview.[2]  The trial court signed a written order and findings on the voluntariness of Barnes's statement in the second interview as required by section six of article 38.22 of the code of criminal procedure.  TEX. CODE CRIM. PROC. ANN. art. 38.22 § 6 (requiring independent finding of voluntariness by court in all cases raising a question of voluntariness of defendant's statement).

Before voir dire and following arraignment, Barnes pleaded not guilty.  When the jury was seated two days later, Barnes changed his plea to guilty.  After admonishing him as to the consequences of his plea, the trial court found the evidence sufficient to prove his guilt beyond a reasonable doubt and accepted the guilty plea.  Trial on punishment then began before the jury.

---

[2] The trial court sustained the motion to suppress as to the discussion of Barnes's Gmail account during the unwarned portion of the second interview.  This portion of the recording was not shown to the jury.

During trial, the State offered the suicide note and recording of the second interview. Barnes's counsel stated they had "no objections" to either exhibit. M.S. testified about several incidents of sexual abuse by Barnes. The State also presented evidence of incidents of sexual abuse by Barnes against other young boys. Evidence was admitted of Barnes's juvenile history involving aggravated sexual assault and various treatment programs in which he participated while on juvenile probation for that offense.

Barnes testified about his attempts over many years to find an effective treatment for his sexual urges regarding young boys, but nothing worked. Barnes also testified he was sexually abused as a child by family members and others. He testified he pleaded guilty because he was guilty, not because he knew the suicide note and second interview would be admitted. He testified he sees himself as a predator and cannot forgive himself.

The jury assessed punishment at ninety-nine years in prison. The trial court rendered judgment and sentenced Barnes in accordance with the verdict.

## ANALYSIS

### A. Preservation of Error

In his first three issues, Barnes challenges the trial court's denial of his motion to suppress the suicide note and his second interview. Barnes sought to suppress the suicide note because it was found inside his Bible, he had a reasonable expectation of privacy in the Bible, and no exceptions to the warrant requirement applied. Barnes moved to suppress the second interview because the detective engaged in an improper "question first, warn later" technique by asking questions before giving Barnes *Miranda* warnings and because the State failed to show he intentionally and knowingly waived his *Miranda* rights due to ingesting Tramadol during his suicide attempt. The trial court overruled the motion to suppress after an evidentiary hearing.

In addition to responding to these arguments, the State contends Barnes waived any

challenge to the trial court's ruling on the motion to suppress when he affirmatively stated "no objection" to the evidence as it was offered at the punishment trial.

Generally, an adverse ruling on a pretrial motion to suppress evidence will suffice to preserve error for appeal, and a defendant need not specifically object to the evidence when it is later offered at trial. *Thomas v. State*, 408 S.W.3d 877, 881 (Tex. Crim. App. 2013). However, a defendant must take care not to affirmatively state he has "no objection" to the evidence when offered at trial or he will have waived his complaint about previously preserved error. *Id*. Application of this "no objection" waiver rule is not inflexible or automatic, but depends on the context. *Id*. at 885; *see Stairhime v. State*, 463 S.W.3d 902, 906 (Tex. Crim. App. 2015). When assessing whether a statement of "no objection" waives a previously preserved error, we first ask whether "the record as a whole plainly demonstrates that the defendant did not intend, nor did the trial court construe, his 'no objection' statement to constitute an abandonment of a claim of error that he had earlier preserved for appeal." *Stairhime*, 463 S.W.3d at 906 (quoting *Thomas*, 408 S.W.3d at 885). If after reviewing the entire record, "it remains ambiguous whether waiver was intended, the court should resolve the ambiguity in favor of a finding of waiver." *Id*. Under those circumstances, "the affirmative 'no objection' statement will, by itself, serve as an unequivocal indication that a waiver was both intended and understood." *Thomas*, 408 S.W.3d at 885–86.

When the State offered the suicide note and recording of the second interview in evidence, Barnes's attorneys affirmatively stated they had "no objections." The evidence was admitted and published to the jury. Barnes used portions of both the suicide note and his interview to argue he took responsibility for his conduct, was forthcoming about assaults on other children, and wanted all the children to get help for what he had done to them. In closing

argument, his attorneys argued this was mitigating evidence the jury should consider in setting punishment. At no time after he stated "no objections" to the evidence, did Barnes indicate he did not intend to waive his complaint about the ruling on the motion to suppress. Nor is there any indication in the record that the trial court considered that Barnes's complaint had not been abandoned. *See Thomas*, 408 S.W.3d at 879–80 (noting trial court's statements after rendering judgment that defendant had right to appeal both ruling on motion to suppress and assessment of punishment). After reviewing the entire record, we conclude it does not "plainly demonstrate" that waiver was not intended or understood. Barnes's statement of "no objection" served as an unequivocal abandonment of his complaint. *Thomas*, 408 S.W.3d at 885–86. We overrule Barnes's first three issues.

## B. Ineffective Assistance of Counsel

In his fourth and fifth issues, Barnes argues that he received ineffective assistance of counsel when his attorneys affirmatively stated "no objections" to the offer of the suicide note and recording of the second interview at the punishment trial.

To successfully assert an ineffective assistance of counsel claim on direct appeal, appellant must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced him; that is, but for the deficiency, there is a reasonable probability that the result of the proceeding would have been different. *See Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). The "claim must be firmly founded in the record and the record must affirmatively demonstrate the meritorious nature of the claim." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Absent an opportunity for trial counsel to explain the conduct in question, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id*. Appellant has the burden to prove his claim by a

preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We indulge in a strong presumption that counsel's conduct was *not* deficient. *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013). Failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffective assistance claim. *See Andrews*, 159 S.W.3d at 101.

Barnes filed a motion for new trial stating only that the verdict was contrary to the law and evidence. He did not assert a claim of ineffective assistance of counsel and there is no record of an evidentiary hearing addressing the issue. Thus, there is no record of trial counsel's strategies or reasons for the allegedly ineffective conduct. Because there is no evidence as to trial counsel's strategy, we cannot determine on this record whether counsel's performance fell below the standard of reasonable assistance. *See Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012) (court could not know on silent record whether counsel had a good or bad reason for failing to raise Confrontation Clause objection).

Barnes argues no legal strategy could support the failure to object to the suicide note and interview after counsel took efforts to suppress them. The State responds that after the ruling on the motion to suppress, Barnes changed his plea to guilty and "at that moment [] the State's best evidence of guilty became Appellant's best evidence in mitigation." According to the State, there is nothing outrageous about trial counsel changing strategy once guilt was no longer at issue. The State contends that portions of the suicide note and the interview showed Barnes accepted responsibility for his conduct, which was part of the defense's mitigation strategy. The State also notes that Barnes specifically testified he pleaded guilty because he was guilty, not because he knew the suicide note and interview would come into evidence.

We agree with the State. On this silent record, we cannot say that counsel's conduct was

"so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392. Therefore, the record does not rebut the strong presumption that counsel rendered effective assistance. *See Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003); *Thompson*, 9 S.W.3d at 814 (appellant failed to rebut presumption of reasonable assistance because record was silent as to "why appellant's trial counsel failed to object to the State's persistent attempts to elicit inadmissible hearsay"). Barnes has failed to establish his claims of ineffective assistance of counsel. We overrule Barnes's fourth and fifth issues.

## C. Ruling on Hearsay Objections

Barnes argues in his sixth and seventh issues that the trial court abused its discretion by overruling his hearsay objections to certain statements contained in his and the complainant's medical records, which were offered in evidence as business records.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *See Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). We reverse only when the trial court's decision was so clearly wrong as to fall outside the zone of reasonable disagreement. *Id.* We uphold the trial court's ruling if it was correct on any theory reasonably supported by the evidence and applicable to the case. *See Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

State's Exhibit 11, Barnes's medical records from the suicide attempt, includes a comment section by a social worker at Medical City Hospital. The comment recites statements Barnes made to the social worker in connection with his discharge planning and need for psychiatric placement. The social worker noted that Barnes reported he has a fascination with younger males, stated "I have an attraction to everything but animals," and expressed frustration with his inability to control his desire to engage in sex with younger males. The social worker wrote that she spoke to the nurse and physician about Barnes's concerns. The trial court

overruled Barnes's hearsay objection to this portion of the medical records and granted a running objection.

State's Exhibit 27 contains a portion of M.S.'s medical records and includes statements by his mother. The mother told medical providers that M.S. complained of pain during urination. She went to the bathroom to check on him, and noticed he was not wearing underwear. When she asked him about it, M.S. said that Barnes told him he did not have to wear underwear. She asked if Barnes had ever done anything to him. M.S. started to cry and asked if she would be mad at Barnes or M.S. She assured him she would not be mad. M.S. then described the details of oral and anal sexual abuse by Barnes. She thought it happened at least five or six times and M.S. told her it last happened on Thursday. She explained that Barnes was a family friend and moved into their home in March as a babysitter and housekeeper. She also stated that Barnes moved out the day of the outcry due to an unrelated altercation. The trial court overruled Barnes's hearsay objection to these statements and granted a running objection.

The State maintains the medical records contained in State's Exhibits 11 and 27 were admissible business records under rule 803(6). *See* TEX. R. EVID. 803(6). While the records themselves qualify as business records of the hospitals, "[w]hen a business receives information from a person who is outside the business and who has no business duty to report or to report accurately, those statements are not covered by the business records exception." *Garcia v. State*, 126 S.W.3d 921, 926 (Tex. Crim. App. 2004). When business records contain "hearsay within hearsay," the proponent must establish that the multiple hearsay statements are independently admissible. *See* TEX. R. EVID. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."); *Sanchez v. State*, 354 S.W.3d 476, 485–86 (Tex. Crim. App. 2011) ("When hearsay contains

–10–

hearsay, the Rules of Evidence require that each part of the combined statements be within an exception to the hearsay rule.").

Regarding Barnes's statements in State's Exhibit 11, the State argues the statements are admissible as admissions by a party opponent under rule 801(e)(2). TEX. R. EVID. 801(e)(2). We agree. Rule 801(e)(2) provides that a statement is not hearsay if it is offered against a party and is the party's own statement. *Id*. 801(e)(2)(A). The statements were Barnes's own and were offered against him. Therefore, they were not hearsay. *See Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999) ("Rule 801(e)(2)(A) plainly and unequivocally states that a criminal defendant's own statements, when being offered against him, are not hearsay."). The trial court did not abuse its discretion by overruling the hearsay objection.

Regarding the mother's statements in State's Exhibit 27, the State contends the statements were made for and pertinent to M.S.'s medical diagnosis or treatment and admissible under rule 803(4). *See* TEX. R. EVID. 803(4). We agree. Certain statements made for and reasonably pertinent to medical diagnosis or treatment are excepted from the hearsay rule. *Id*. (including statements describing medical history, past or present symptoms or sensations, their inception, or general cause). Texas courts have held that statements by a suspected victim of child abuse as to the causation and source of the child's injuries are admissible under rule 803(4). *Gregory v. State*, 56 S.W.3d 164, 183 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd); *Beheler v. State*, 3 S.W.3d 182, 189 (Tex. App.—Fort Worth 1999, pet. ref'd). "[U]nlike ordinary medical problems, the treatment of child abuse includes removing the child from the abusive setting. Thus, the identity of the abuser is pertinent to the medical treatment of the child." *Fleming v. State*, 819 S.W.2d 237, 247 (Tex. App.—Austin 2001, pet. ref'd). Further, statements made by the parent of an injured child for purposes of diagnosing or treating the child

–11–

qualify as an exception under rule 803(4). *Sandoval v. State*, 52 S.W.3d 851, 856–57 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd); *Ponce v. State*, 89 S.W.3d 110, 120 (Tex. App.—Corpus Christi 2002, no pet.). Therefore, the trial court did not abuse its discretion by overruling the hearsay objection.

We overrule Barnes's sixth and seventh issues.

## D. Modification of the Judgment

In his last issue, appellant contends the judgment incorrectly states he pleaded not guilty to the offense and should be modified to reflect his plea of guilty. The State agrees. The record shows that appellant affirmatively pleaded guilty in open court and the trial court accepted his plea. Accordingly, we modify the section of the judgment titled "Plea to Offense:" to reflect that appellant entered a plea of "Guilty." *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd).

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed as modified.

/Craig Stoddart/
CRAIG STODDART
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
161184F.U05

−12−



# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

KARL DAVIS BARNES, Appellant

No. 05-16-01184-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1524402-Q.
Opinion delivered by Justice Stoddart.
Justices Bridges and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The section of the judgment titled "Plea to Offense:" is modified to state "Guilty."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 29th day of November, 2017.