

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-1071-14

**RYAN MATTHEW STAIRHIME, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE FIRST COURT OF APPEALS HARRIS COUNTY

**YEARY, J., delivered the opinion for a unanimous Court.**

## O P I N I O N

Appellant argued on direct appeal that he was prevented from asking a proper question to the venire during jury selection. The court of appeals refused to address the merits of his complaint, however, holding that Appellant later waived any error he might have earlier preserved. *Stairhime v. State*, 439 S.W.3d 499, 507 (Tex. App.—Houston [1st Dist.] 2014). When the names of the twelve jurors were called out and the jury was empaneled, the trial court immediately asked whether either party had "an objection to the

panel or as to the jury as selected[.]" *Id*. Appellant answered, "No, Your Honor." *Id*. The court of appeals agreed with the State that, by his response, Appellant waived "any complaints about the [conduct] of voir dire[.]" *Id*. We granted Appellant's petition for discretionary review to examine whether the court of appeals correctly regarded Appellant's answer to constitute a waiver of his appellate complaint that he had been denied the opportunity to pose a proper question. We reverse.

## BACKGROUND

Appellant was indicted for the offense of murder. The jury ultimately convicted him of that offense and assessed his punishment at forty-three years' confinement in the penitentiary. He raised four points of error on appeal, all of which the court of appeals rejected. In his fourth point of error, Appellant argued that the trial court erred during voir dire by refusing to allow him to propound a specific question in a specific way to the venire. His counsel asked essentially the same question three times. Each time, the State objected to the "form" of the question as Appellant's counsel had proposed to ask it. Each time the court sustained the State's objection.

### The Voir Dire

In explaining to the venire that the State generally has the burden of proof in a criminal prosecution, the trial court remarked, "What that also means is the defendant, his silence alone, him just sitting there, is enough to acquit him. Everybody heard of the Fifth Amendment right to testify or not testify?" A short time later, the trial court returned to this

theme:

> "[T]he point is, if either [Defense Counsel] or [Appellant] remain silent throughout this entire trial, it is very clear, the law says you can't hold that as evidence against him. You can't discuss it at all, and particularly you can't hold that as evidence of guilt just because someone remains silent.
>
> So to be a qualified juror on a case, that's what I was talking about, is who's qualified to be a juror. One of the laws you have to follow, "If I don't hear from the defendant or the defendant doesn't testify or the defense doesn't put on any case, I don't have to hear from them to be able to reach a verdict."
>
> * * *
>
> So the Fifth Amendment right. The point is, you can't hold it against [Appellant] if he doesn't testify.

The trial court did not ask whether individual veniremembers could follow this principle.

The prosecutor also touched on the Fifth Amendment privilege. She asked the panel as a whole whether "there [is] anybody here that will use it as evidence of the defendant's guilt if he does not testify?" Going row by row, she identified two prospective jurors (Prospective Juror 9 and Prospective Juror 36) who answered "yes."

Counsel for Appellant spent a more substantial portion of his voir dire covering the same topic. After explaining to the panel that there might exist any number of reasons a defendant might choose not to testify, defense counsel continued: "So having said that, what you've got to do if he decides not to testify is put that out of your mind and not hold it against him. You can't use his failure to testify as any evidence of guilt." He then proposed to ask each of the one hundred prospective jurors whether they could adhere to that mandate. Prospective Juror Number 1 asked, "What do you want to know? You want to know how I

feel about it?" The following colloquy ensued:

> [DEFENSE COUNSEL]: What I want to know, if [Appellant] does not take the stand, are you going to use that as evidence of guilt? In other words, do you have to hear from him?

> VENIREPERSON: No, I don't.

> [DEFENSE COUNSEL]: Juror No. 2?

> VENIREPERSON: No.

> [DEFENSE COUNSEL]: Juror No. 3?

> VENIREPERSON: Yes, I would like to hear from him.

> [DEFENSE COUNSEL]: We all would like to.

> VENIREPERSON: Okay. Yeah.

> [DEFENSE COUNSEL]: I think we're all in agreement we would like to hear from the defendant, right? Okay. And that's fair. That's human nature.

> VENIREPERSON: So you're asking if we don't hear from him, are we going to hold that against him?

> [DEFENSE COUNSEL]: Exactly. In other words, do you have to hear from him to be a fair juror?

> [PROSECUTOR]: Judge, I'm going to object to the form of the question.

> THE COURT: Sustained.

> [DEFENSE COUNSEL]: I'll rephrase it. . . . If [Appellant] refuses to testify, can you put that aside, out of your mind and be fair?

> [PROSECUTOR]: I'm going to object again to the form of the question.

> THE COURT: Sustained.

[DEFENSE COUNSEL]: Do you have to hear from the defendant?

[PROSECUTOR]: Again, I object to the form of the question. It's whether or not they would use it as evidence of his guilt.

THE COURT: Sustained.

[DEFENSE COUNSEL]: Are you going to use it as evidence of his guilt if he does not testify?

VENIREPERSON: Yes.

Without ever reformulating the question again, defense counsel then directed the other ninety-seven jurors to answer it as ultimately posed, namely, "Are you going to use it as evidence of [Appellant's] guilt if he does not testify?" This time, ten prospective jurors (Prospective Jurors 3, 9, 10, 22, 36, 37, 45, 52, 55, and 99) answered, "yes."

The parties agreed to strike each of these prospective jurors for cause (except for Prospective Juror 99—but only because the parties also agreed that they had obtained an adequate jury pool by the time they reached Prospective Juror 76). The State then exercised all ten of its peremptory challenges, while Appellant used only eight of his. It was at this point that the names of the twelve prospective jurors who remained were summoned to the jury box, and the following colloquy ensued:

THE COURT: With all of our thanks, the rest of you are free to go. Thank you very much.

(Jury seated)

(Jury panel excused)

THE COURT: Does either side have an objection to the panel or as to

the jury as selected?

[DEFENSE COUNSEL]: No, Your Honor.

[PROSECUTOR]: No, Your Honor.

The trial court then admonished the jury and recessed the proceedings until the morning of

trial.

## The Appeal

In his fourth point of error on direct appeal, Appellant complained about the trial

court's ruling on the State's objections to his voir dire questions.[1] The court of appeals

refused to address the merits of the point of error, however, and disposed of the complaint

with the following explanation:

> Here, at the end of voir dire, the trial court asked, "Does either side
> have an objection to the panel or as to the jury as selected?" Both Appellant
> and the State responded, "No, Your Honor." We hold Appellant waived any
> error related to the conduct of voir dire.

*Stairhime*, 439 S.W.3d at 507. In support of this proposition, the court of appeals relied upon

its own earlier opinion in *Harrison v. State*, 333 S.W.3d 810, 812 (Tex. App.—Houston [1st

Dist.] 2010, pet. ref'd). *Id*.

Justice Brown filed a concurring opinion. *Id*. at 507-08. He expressed skepticism that

Appellant had really intended, or that the trial court had actually taken him to mean, that he

wished to waive his earlier request to propound the question in his desired fashion (or, for

---

[1] We express no opinion about the merits of the prosecutor's objections to the form of Appellant's questions or to the trial court's rulings thereon, since the court of appeals did not reach those questions. Instead, we leave those questions to the court of appeals to address on remand, should that become necessary. *See* note 3, *post*.

that matter, that he wished to waive any other potential error that may have occurred during the course of the voir dire) by answering the trial court's particular query as he had. *Id*. at 508. Justice Brown construed the trial court merely to be asking whether the jury as empaneled accurately reflected the twelve members of the venire who remained after all challenges for cause and peremptory strikes had been exercised:

> In my view, the [trial] court's question . . . was not sufficiently specific to notify [Appellant] that the court wanted to hear objections not just on the narrow issue immediately before it—the seating of the jury—but also on every issue that had occurred during the voir dire process.

*Id*. Nevertheless, considering himself bound by *Harrison*, Justice Brown concurred in the result. *Id*.

In his petition for discretionary review, Appellant now contends that Justice Brown has the better argument and urges us to adopt it. Appellant's Brief on the Merits at 9-10.

## ANALYSIS

In its earlier opinion in *Harrison*, the court of appeals relied upon two cases from this Court in support of its holding that an affirmative statement of "no objection" on the record at the conclusion of jury selection will serve to "waive" appellate review of an earlier-preserved claim of voir dire error: *Swain v. State*, 181 S.W.3d 359, 368 (Tex. Crim. App. 2005), and *Moraguez v. State*, 701 S.W.2d 902, 904 (Tex. Crim. App. 1986). *Harrison*, 333 S.W.3d at 813. *Swain* and *Moraguez* both acknowledge the general principle that appellate review of an objection to evidence that adequately preserves a claim for appeal may yet be relinquished by a subsequent affirmative waiver on the record. *Swain*, 181 S.W.3d at 368;

*Moraguez*, 701 S.W.2d at 904. This principle—in its evidentiary context—has been aptly

described by Professors George Dix and John Schmolesky:

> If an objection to evidence has previously been made and action has been
> taken that preserves it for appeal, but when the opponent actually offers the
> evidence counsel says, "no objection," that comment constitutes a waiver of
> the previously preserved error. Whether the trial court erred in ruling on the
> objection will not be reached on appeal.

George E. Dix & John M. Schmolesky, 43A TEXAS PRACTICE: CRIMINAL PRACTICE AND

PROCEDURE § 53:150, at 1174 (3d ed. 2011). Indeed, we have often held that such a

statement will operate to waive appellate review of the denial of a motion to suppress

evidence.[2]

We recently revisited and revised the "no-objection" waiver rule, in *Thomas v. State*,

408 S.W.3d 877 (Tex. Crim. App. 2013). In that case we explained that the rule should not

be applied inflexibly, noting that "[n]o purpose is served by insisting that earlier-preserved

error is abandoned by a later statement of 'no objection' when the record otherwise

establishes that no waiver was either intended or understood." *Id*. at 885. Instead, we held

that "the rule that a later statement of 'no objection' will forfeit earlier-preserved error is

context-dependent." *Id*. We explained its proper application in this way:

> If the record as a whole plainly demonstrates that the defendant did not intend,
> nor did the trial court construe, his "no objection" statement to constitute an
> abandonment of a claim of error that he had earlier preserved for appeal, then
> the appellate court should not regard the claim as "waived," but should resolve

---

[2] *See, e.g., Estrada v. State*, 313 S.W.3d 274, 302 (Tex. Crim. App. 2010); *Jones v. State*, 833 S.W.2d 118, 126 (Tex. Crim. App. 1992); *Harris v. State*, 656 S.W.2d 481, 484 (Tex. Crim. App. 1983); *Mayberry v. State*, 532 S.W.2d 80, 83-84 (Tex. Crim. App. 1976) (opinion on reh'g).

> it on the merits. On the other hand, if from the record as a whole the appellate court simply cannot tell whether an abandonment was intended or understood, then, consistent with prior case law, it should regard the "no objection" statement to be a waiver of the earlier-preserved error. Under the latter circumstances, the affirmative "no objection" statement will, by itself, serve as an unequivocal indication that a waiver was both intended and understood.

*Id*. This amounts to a general rule that, when assessing the meaning of an attorney's statement that he or she has "no objection" in regard to a matter that may have been previously considered and ruled upon, courts should first ask whether "the record as a whole plainly demonstrates that the defendant did not intend, nor did the trial court construe, his 'no objection' statement to constitute an abandonment of a claim of error that he had earlier preserved for appeal." *Id.* If, even after reviewing the whole record, it remains ambiguous whether waiver was intended, the court should resolve the ambiguity in favor of a finding of waiver. *Id*.

Applying *Thomas* to the facts of the instant case, we hold that Appellant's response to the trial court's inquiry did not, in context, amount to a waiver. We do not think it is remotely possible that the trial court's question in this case was directed at whether either party desired to waive previously preserved error that may have occurred during voir dire. Asking whether there is an objection to "the seating of the jury," or "to the panel," or "to the jury as selected," makes reference to no specific event that may have occurred previously during the course of the voir dire. The context and timing of questions such as those suggest that they refer to nothing more than the process of confirming that the parties' peremptory strike lists have been properly executed to arrive at the otherwise intended petit jury. Thus,

we agree that, presuming any broader significance to the question at that stage of voir dire is to "set[] a trap for counsel." *Stairhime*, 439 S.W.3d at 508 (Brown, J., concurring).

In our opinion, there is no ambiguity in the circumstances presented here such as would call for the invocation of the exception to the general rule discussed in *Thomas*. Even if there was in this case a remote possibility that Appellant intended to waive his previously preserved complaints from the voir dire proceedings, or that the trial court understood him to have intended such a waiver, that "contingency is [not] likely enough to justify the absolute and unforgiving application of a rule [requiring the court of appeals to find] that [counsel's] statement of 'no objection' [should] operate to forfeit [any] claim of error that [may have] already been assiduously preserved[.]" *Thomas*, 408 S.W.3d at 885. We recognize the perils of such an extension of the "no objection" waiver rule, and we refuse to extend it that far.

An examination of the facts of *Harrison*—the very case upon which the court of appeals in this case relied—helps to illustrate why this holding is appropriate. In *Harrison*, the issue that the appellant tried to raise on appeal was whether the trial court erred in failing to extend additional time beyond the initially allotted half an hour for defense counsel to conduct his voir dire. 333 S.W.3d at 811-13. Noting that it had already granted counsel fourteen minutes beyond that initial time limit, the trial court refused to permit defense counsel to continue. *Id*. at 812. Harrison proffered a written motion to the trial court that listed the additional questions he wished to propound to the venire and orally added even

more questions, offering to make a formal bill later to add those additional questions to those he had already committed to writing in his motion. *Id*. After strikes were exercised, the trial court asked whether either party had "any objection to the seating of the jury." *Id*. Both sides stated, "none." *Id*. The jury was sworn in. *Id*. Outside the jury's presence, Harrison then recited into the record "the questions he asserted he would have asked had he been given more time." *Id*.  Just before the indictment was read to the jury, the trial court again asked whether the parties objected "to the seating of the jury." *Id*. Harrison responded, "None from the defense." *Id*.

Harrison's counsel took great pains to make an appellate record to support his request for additional time to question the prospective jurors. He persisted in his efforts even after the trial court first asked whether either party objected to the seating of the jury. It is unrealistic to think that when Harrison answered "none," he either intended, or the trial court understood him to intend, to waive the appellate complaint that he had not been given sufficient time to conduct his voir dire. We think the record there plainly demonstrated otherwise.

We agree with Justice Brown's concurrence in this case, in which he explained, "[a]t that moment in the trial [at the end of voir dire, when the court has just seated the jury], the attorneys are focused on examining their strike sheets to ensure that the court has not accidentally seated a juror whom the party had struck on the peremptory strike list, evaluating the other party's strikes, and analyzing the resulting composition of the jury." *Stairhime*, 439

S.W.3d at 508 (Brown, J., concurring). Under these circumstances, the trial court's query—about whether the parties had any objection "to the panel or as to the jury as selected"—"was not sufficiently specific to notify the appellant that the court wanted to hear objections not just on the narrow issue immediately before it—the seating of the jury—but also on every issue that had occurred during the voir dire process." *Id*., at 507-08.

Examining the record as a whole, we conclude that it demonstrates that Appellant neither intended, nor did the trial court likely believe he intended, to waive any error he had previously preserved with respect to the questions he wanted to propound to prospective jurors. This is not to say, of course, that an appellant may not affirmatively waive his ability to raise previously preserved voir dire error on appeal by a clear and unequivocal statement on the record that he wishes to do so. But the record in this case demonstrates that Appellant made no such affirmative waiver of his right to appeal the trial court's rulings on the State's objections to the form of his questions during voir dire.

**CONCLUSION**

We hold that a reply of "None" or "No, Your Honor," to the question of whether there is an objection to "the seating of the jury," or "to the panel," or "to the jury as selected" at the conclusion of jury selection does not constitute a waiver of any previously preserved claim of error during the voir dire proceedings. We overrule *Harrison* to the extent that it conflicts with this holding. The judgment of the court of appeals is reversed, and the case is

remanded to that court for further proceedings consistent with this opinion.[3]

DELIVERED:       July 1, 2015
PUBLISH

---

[3] We recognize that, in its reply brief on direct appeal, the State made additional arguments claiming that Appellant failed to preserve his fourth point of error. The court of appeals did not address these arguments, and neither do we at this time. We note, however, that preservation of error is a systemic requirement, meaning that appellate courts cannot reverse a conviction without addressing any extant issue of waiver or procedural default. *See Gipson v. State*, 383 S.W.3d 152, 159 (Tex. Crim. App. 2012).