In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00369-CR**
**NO. 09-24-00370-CR**
**NO. 09-24-00371-CR**
**NO. 09-24-00372-CR**
**NO. 09-24-00373-CR**
**NO. 09-24-00374-CR**
**NO. 09-24-00375-CR**

_____

**JOSHUA AARON VANARSDALE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause Nos. 23-03-04686-CR, 23-04-04866-CR, 23-04-04868-CR,**
**23-04-04870-CR, 23-04-04871-CR, 23-04-04872-CR, 23-10-15062-CR**

_____

**MEMORANDUM OPINION**

Joshua Aaron Vanarsdale appeals his convictions for continuous sexual abuse

of a child in trial cause number 23-03-04686-CR/appellate cause number 09-24-

00369-CR, possession of child pornography in trial cause number 23-04-04866-

1

CR/appellate cause number 09-24-00370-CR, trial cause number 23-04-04868-CR/appellate cause number 09-24-00371-CR, trial cause number 23-04-04870-CR/appellate cause number 09-24-00372-CR, trial cause number 23-04-04871-CR/appellate cause number 09-24-00373-CR, and trial cause number 23-04-04872-CR/appellate cause number 09-24-00374-CR, and aggravated sexual assault in trial cause number 23-10-15062-CR/appellate cause number 09-24-00375-CR. *See* Tex. Penal Code Ann. § 21.02 (continuous sexual abuse of a young child), § 43.26 (possession or promotion of child pornography), and § 22.021 (aggravated sexual assault). In five issues, Vanarsdale complains that the trial court erred by: (1) allowing Vanarsdale's statement to be used in trial in violation of *Miranda* and Texas Code of Criminal Procedure article 38.22; (2) admitting extraneous offense evidence related to a purported victim not named in any of the indicted offenses; (3) allowing an investigator to testify as an expert about the contents of three electronic devices where the investigator was not the individual who extracted the data from the devices; (4) denying Vanarsdale's request to instruct the jury on the lesser-included offense of indecency with a child by contact in the charge for aggravated sexual assault; and (5) failing to waive court costs, including the reimbursement fees, in all cases. For the reasons discussed below, we affirm the trial court's judgments as modified.

Background

In March 2023, Investigator Pamela Minchew with the Montgomery County Precinct 2 Internet Crimes Against Children (ICAC) Task Force received a Google cyber tip related to child pornography. The cyber tip provided Vanarsdale's name, date of birth, email address, driver's license, and a "selfie" photograph. The cyber tip included a non-pornographic photo of a male child and two females standing outside of The Woodlands Waterway Parkway and a pornographic video depicting the same male child, wearing the same shirt as that worn by the male in the photo, and an unknown male, later identified as Vanarsdale, rubbing the male child's penis with his hand. Minchew identified the juvenile male in the non-pornographic photo and the pornographic video as then eight-year-old T.G., a relative of Vanarsdale's.[1]

Minchew provided Montogomery County District Attorney Investigator Mike Wright still photographs of a fingerprint from the video. Wright performed a fingerprint analysis and determined the fingerprint was a match for Vanarsdale. Minchew obtained Vanarsdale's current address by looking up the associated IP address, which matched his address on Lonely Pines Drive in Conroe. On March 28, 2023, surveillance was conducted on the Lonely Pines Drive residence. Law

---

[1]To protect the privacy of the victims, we refer to the victims with pseudonyms. *See* Tex. Const. art. I, § 30(a)(1) (granting victims of crime "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

enforcement executed a residential search warrant on March 30 and detained Vanarsdale. After receiving the *Miranda* warnings, Vanarsdale confessed to making the hand-to-penis video in the cyber tip and touching T.G.'s penis at Vanarsdale's previous residence on Honeysuckle Lane in Porter. Vanarsdale also told Minchew that he recorded a then nine-year-old male child, A.M.-H., while the child bathed naked in the bathtub. Without prompting, Vanarsdale asked whether Minchew knew about another then eight-year-old male child, M.B., to whom Vanarsdale admitted texting videos and links to pornography.

Minchew arrested Vanarsdale and collected multiple devices, laptops, flash drives, SD cards, cell phones, and electronics from the residence. An extraction was performed on the devices. In reviewing the extractions, Minchew found another video of T.G. This video showed Vanarsdale putting his mouth on T.G.'s penis. Vanarsdale's face is in the video. T.G.'s mother provided pictures of the Honeysuckle Lane residence where this assault occurred, displaying a rabbit cage and brown love seat near the fireplace that was present in the mouth-to-penis video. Minchew determined that Vanarsdale made the hand-to-penis video in September 2021, while the mouth-to-penis video could have been made no later than January of 2021, when T.G.'s family moved from the Honeysuckle Lane to the Lonely Pines residence. While reviewing the extraction, Minchew also found videos of Vanarsdale bathing A.M.-H. in a bathtub.

4

M.B. outcried at both his forensic interview and SANE exam that Vanarsdale had sexually assaulted him in the summer of 2020 at A.M.-H.'s house, when M.B. was six years old. While A.M.-H. and his mother were gone, M.B. was playing video games on the couch when Vanarsdale pushed M.B. down and restrained M.B.'s wrists. He pulled down M.B.'s pants and underwear and touched M.B.'s "peepee" with his hand. Vanarsdale then touched M.B.'s penis with Vanarsdale's penis as M.B. screamed and fought trying to get Vanarsdale off of him so he could leave. Eventually, Vanarsdale stopped sexually abusing M.B. M.B. recalled that something "soapy, white, and sticky" came out of Vanarsdale's "peepee" and went on M.B.'s thigh. M.B. testified similarly at trial.

Jeffrey Chappell, the director for the Digital Forensics Unit at the Montgomery County District Attorney's Office, located approximately 1,000 child pornography images and videos on three of Vanarsdale's cellular phones and one USB drive. At trial, the State admitted five videos containing child sexual abuse material consistent with the allegations in the five indictments for possession of child pornography.

## Issues

### Miranda and Texas Code of Criminal Procedure Article 38.22

In his first issue, Vanarsdale complains that the trial court erred by allowing Vanarsdale's statement to law enforcement to be used in trial in violation of *Miranda*

and Texas Code of Criminal Procedure article 38.22. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966); Tex. Code Crim. Proc. Ann. art. 38.22 Outside the presence of the jury, the trial court held a *Miranda* hearing concerning Vanarsdale's statement made to investigators. The State called Pamela Minchew, Investigator for Montgomery County Constable Precinct 2, as its sole witness.

On March 30, law enforcement executed a residential search warrant and arrested Vanarsdale that day. Minchew introduced herself to Vanarsdale and asked him to talk to her and Detective Serratt, who is also a part of the ICAC Task Force. Minchew's conversation with Vanarsdale was recorded on her body-worn camera. Minchew Mirandized Vanarsdale "[a]t the very beginning, a few minutes into the very beginning" of their conversation. She advised Vanarsdale that he had the right to terminate the interview. After she advised him of his rights, Vanarsdale continued to talk to her.

At some point, Vanarsdale declined to talk to Minchew when he asked for an attorney. When Vanarsdale asked for an attorney, Minchew and Serrat "stopped the interview, and we placed him in the back of the patrol car, Deputy Sal's patrol car with my agency, and let him kind of rest for a little bit." After he initially terminated the interview, Vanarsdale's mother asked if she could talk to him. She allowed his mother to speak with him and "moved the patrol car where it was an easier walk." Vanarsdale's mother told him that "she was disappointed, that she knew he had

6

lawyered up, not to say anything and that they would get through it and that she was very upset." Minchew was then told that Vanarsdale had asked Deputy Sal to talk with them. Deputy Sal asked her and Detective Serrat to come back. Detective Serratt then reread Vanarsdale his *Miranda* warnings on camera. After the *Miranda* warnings were reread, law enforcement reengaged in conversation with Vanarsdale in the back of the patrol car.

In this second conversation, Vanarsdale told investigators where he was viewing the child pornography, discussed the video where Vanarsdale was touching T.G., taking a video of A.M.-H. in the bathtub, and sending text messages to M.B. At the end of the hearing, Vanarsdale argued that the State "engaged his mother as a proxy to use him to speak with [law enforcement] again and that he should have – the State should have disengaged completely after he requested a lawyer the first time." The trial court denied Vanarsdale's motion to exclude.

We review the trial court's denial of a motion to suppress under a bifurcated standard of review. *Igboji v. State*, 666 S.W.3d 607, 612 (Tex. Crim. App. 2023); *Dugar v. State*, 629 S.W.3d 494, 497 (Tex. App.—Beaumont 2021, pet. ref'd). We review the determination of whether a specific search and seizure was reasonable under a *de novo* standard, but we give the trial court almost complete deference in determining historical facts that depend on credibility and demeanor. *Igboji*, 666 S.W.3d at 612 (citations omitted); *Gallagher v. State*, Nos. 09-21-00307-CR, 09-21-

7

00308-CR, 09-21-00309-CR, 09-21-00310-CR, 2023 Tex. App. LEXIS 270, at *13 (Tex. App.—Beaumont Apr. 26, 2023, pet. ref'd) (mem. op., not designated for publication). When, as here, the trial court does not make explicit findings of fact, we review the evidence in a light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record. *Igboji*, 666 S.W.3d at 612 (citing *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005)). Generally, we limit our review to the record of the suppression hearing. *Id.* (citation omitted).

"*Miranda* and Article 38.22 of the Texas Code of Criminal Procedure deem statements produced by custodial interrogation to be inadmissible unless the accused is first warned that []he has the right to remain silent, h[is] statement may be used against h[im], and []he has the right to hire a lawyer or have a lawyer appointed." *Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021). "In addition, Article 38.22 requires a warning that the accused has the right to terminate the interview at any time." *Id.* "The warnings are required only when there is custodial interrogation." *Id.*

When a suspect expresses his right to terminate further police questioning unless he has assistance of counsel, a valid waiver of this right cannot be established merely by showing that the suspect responded later to police-initiated questioning. *See Edwards v. Arizona*, 451 U.S. 477, 484 (1981); *see also Maryland v. Shatzer*,

8

559 U.S. 98, 104 (2010). "The *Edwards* rule is 'designed to prevent police from badgering a defendant into waiving his previously asserted Miranda rights[.]'" *Montejo v. Louisiana*, 556 U.S. 778, 787 (2009) (quoting *Michigan v. Harvey*, 494 U.S. 344, 350 (1990)). The State must establish (1) that following invocation of the right to counsel, the suspect initiated further communication with the police, and (2) that, after initiating this further communication, the suspect then validly waived his previously asserted right to counsel. *See Oregon v. Bradshaw*, 462 U.S. 1039, 1044-45 (1983); *see also Cross v. State*, 144 S.W.3d 521, 524 (Tex. Crim. App. 2004) ("[W]hen a suspect has invoked his right to counsel, but then voluntarily reinitiates conversation with the police and expressly waives his right to counsel, the *Edwards* rule has been satisfied."). Once the State establishes the two-step test in *Bradshaw*, "the suspect has countermanded his original election to speak to authorities only with the assistance of counsel." *Cross*, 144 S.W.3d at 527.

*Miranda* requirements generally apply only to questioning by law enforcement officers or their agents. *Wilkerson v. State*, 173 S.W.3d 521, 527 (Tex. Crim. App. 2005). If an individual works on behalf of law enforcement by interrogating a person in custody, that individual "is bound by all constitutional and statutory confession rules, including *Miranda* and Article 38.22." *Id.* at 529-30. Reviewing courts should review the entire record and consider the following factors in determining whether the individual operates as a state actor: (1) the relationship

9

between the police and potential agent, (2) the interviewer's actions and perceptions, and (3) evidence of the defendant's perceptions of the encounter. *Id.* at 530-31. All in all, the inquiry is: "Was this custodial interview conducted (explicitly or implicitly) on behalf of the police for the primary purpose of gathering evidence or statements to be used in a later criminal proceeding against the interviewee?" *Id.* at 531.

Rule 33.1(a) of the Texas Rules of Appellate Procedure provides that a complaint is not preserved for appeal unless it was made to the trial court "by a timely request, objection or motion" that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." Tex. R. App. P. 33.1(a)(1)(A). Similarly, Texas Rule of Evidence 103 provides that error may not be predicated upon a ruling which admits or excludes evidence unless a party "timely objects or moves to strike [] and states the specific ground, unless it was apparent from the context[.]" Tex. R. Evid. 103(a)(1).

"The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; (2) to give opposing counsel the opportunity to respond to the complaint." *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). A party must be specific enough so as to "let the trial judge know what he wants, why he thinks

himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).

Texas Code of Criminal Procedure article 38.22, section 3(a)(2) provides that oral statements made during custodial interrogation are not admissible as evidence unless "prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning[.]" Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a)(2). During the *Miranda* hearing, Vanarsdale made no argument that the police failed to memorialize his *Miranda* warnings on tape and did not bring the specific violations of article 38.22 to the trial court's attention. Therefore, Vanarsdale has waived any argument regarding article 38.22.

At the *Miranda* hearing, Vanarsdale argued that law enforcement used his mother as a proxy in order to speak with him again after Vanarsdale had invoked his *Miranda* rights. The trial court denied Vanarsdale's motion to exclude. When the State introduced Exhibit 16, Minchew's body worn camera recordings that included some of Vanarsdale's statements, Vanarsdale had "no objection[]" to the exhibit and the court admitted the recording. The State argues that because Vanarsdale had "no objection" to the admission of the body camera recording, he abandoned his earlier claim of error and, therefore, has waived any complaint on appeal.

11

Generally, an adverse ruling on a pretrial motion to suppress evidence will suffice to preserve error for appeal, and a defendant need not specifically object to the evidence when it is later offered at trial. *Thomas v. State*, 408 S.W.3d 877, 881 (Tex. Crim. App. 2013). However, a defendant must take care not to affirmatively state that the defendant has "no objection" to the evidence when the evidence is offered at trial, or the defendant may have waived the complaint about previously preserved error. *Id.* Application of this "no objection" waiver rule is not inflexible or automatic, and it depends on the context. *Id.* at 885; *see Stairhime v. State*, 463 S.W.3d 902, 906 (Tex. Crim. App. 2015). When assessing whether a statement of "no objection" waives a previously preserved error, we first ask whether "the record as a whole plainly demonstrates that the defendant did not intend, nor did the trial court construe, his 'no objection' statement to constitute an abandonment of a claim of error that he had earlier preserved for appeal[.]" *Stairhime*, 463 S.W.3d at 906 (quoting *Thomas*, 408 S.W.3d at 885). If after reviewing the entire record, "it remains ambiguous whether waiver was intended, the court should resolve the ambiguity in favor of a finding of waiver." *Id.* Under such circumstances, "the affirmative 'no objection' statement will, by itself, serve as an unequivocal indication that a waiver was both intended and understood." *Thomas*, 408 S.W.3d at 885-86.

When the State offered Minchew's body camera recording of the interview with Vanarsdale, the defense affirmatively stated that Vanarsdale had "no objection" to the exhibit. The evidence was admitted and published to the jury. At no time before or after Vanarsdale stated "no objection" to this evidence did he indicate that he did not intend to waive his complaint about the ruling on the motion to exclude. Additionally, there is no indication in the record that the trial court considered that Vanarsdale's complaint had not been abandoned. If it remains ambiguous whether waiver was intended, we must resolve the ambiguity in favor of a finding of waiver. *Stairhime*, 463 S.W.3d at 906. After reviewing the entire record, we conclude the record does not "plainly demonstrate" that waiver was not intended or understood. *See Thomas*, 408 S.W.3d at 885-86. Vanarsdale's statement of "no objection" to the admission of the body camera recording during the trial establishes he waived and abandoned the complaint he made in his motion to exclude. *See Stairhime*, 463 S.W.3d at 906; *Thomas*, 408 S.W.3d at 885-86. We overrule Vanarsdale's first issue.

Extraneous Offense Evidence

In his second issue, Vanarsdale complains the trial court erred by admitting extraneous offense evidence related to a purported victim that was not named in any of the indicted offenses. According to Vanarsdale, under Rule 404 the evidence did not tend to prove a material fact in the State's case apart from its tendency to demonstrate Vanarsdale's general propensity for committing criminal acts and,

13

therefore, was inadmissible. Additionally, Vanarsdale complains that under Rule 403, any probative value of this unrelated evidence was significantly outweighed by its prejudicial effect.

The prosecutor asked Minchew about whether Vanarsdale gave her "any other information about any other things" when he spoke to her the night of his arrest. Minchew replied that she "had some information prior to going into it, as far as potential kids I wanted to ask about. So, I started asking about additional juveniles[.]" Outside the presence of the jury, Vanarsdale objected to testimony concerning A.M.-H. under Rules of Evidence 404(b) and 403. Minchew previously testified outside the jury's presence that Vanarsdale had admitted recording videos of A.M.-H. while A.M.-H. was in the bathtub. The State responded that these extraneous acts were admissible under Texas Code of Criminal Procedure article 38.37 and Texas Rule of Evidence 404. The trial court overruled Vanarsdale's objections.

Minchew testified that when she started talking about A.M.-H. with Vanarsdale, Vanarsdale admitted that "he would give [A.M.-H.] baths and record whenever he was taking a bath . . . . [H]e would bathe [A.M.-H.] and film videos and pictures whenever he was in the bathroom with [A.M.-H.] taking a bath." Later in the trial, the State offered thumbnail still photographs from a video on Vanarsdale's cellular device, which showed A.M.-H. bathing with his penis

14

exposed. Chappell stated that the "actions by the child in moving around [] were not what you would normally consider part of just taking a normal bath."

We review the trial court's decision to admit evidence of extraneous offenses under Article 38.37 for an abuse of discretion. *Guevara v. State*, 667 S.W.3d 422, 438-39 (Tex. App.—Beaumont 2023, pet. ref'd); *Lopez v. State*, No. 09-19-00179-CR, 2021 Tex. App. LEXIS 2002, at *18 (Tex. App.—Beaumont Mar. 17, 2021, no pet.) (mem. op., not designated for publication) (citing *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011)). "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *De La Paz v. State*, 279 S.W.3d 336, 343-44 (Tex. Crim. App. 2009) (citation omitted). Generally, when challenged on appeal, a ruling admitting evidence of extraneous offenses will be found to fall within the zone of reasonable disagreement "if the evidence shows that 1) an extraneous transaction is relevant to a material, non-propensity issue, and 2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Id.* at 344.

Generally, evidence of extraneous offenses may not be used against the accused in a criminal trial, but exceptions exist. *Lopez*, 2021 Tex. App. LEXIS 2002, at *16. One exception is article 38.37 of the Texas Code of Criminal Procedure, which provides for a hearing outside the jury's presence so the trial court can

15

determine whether certain evidence of extraneous offenses should be admitted at trial. *Id.*; *see* Tex. Code Crim Proc. Ann. art. 38.37. Section 2(b) of the statute allows for the admission of evidence of extraneous offenses committed by the defendant against individuals other than the victim and states as follows:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

Tex. Code Crim Proc. Ann. art. 38.37 § 2(b); *see Lopez*, 2021 Tex. App. LEXIS 2002, at *16 (citing *Aguillen v. State*, 534 S.W.3d 701, 711 (Tex. App.—Texarkana 2017, no pet.)).

Although extraneous-offense evidence admissible under article 38.37 does not have to meet the requirement of Texas Rule of Evidence 404, the trial court must conduct a balancing test under Rule of Evidence 403 before it admits the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.37 § 2(b); *see also Garcia v. State*, 201 S.W.3d 695, 702, 704 (Tex. Crim. App. 2006); *Lopez*, 2021 Tex. App. LEXIS 2002, at *17. When a trial court conducts a Rule 403 balancing test, it must balance:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the

16

evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006). The trial court may exclude the evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Tex. R. Evid. 403. The trial court must also determine whether the evidence of prior sexual misconduct likely to be admitted will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt. Tex. Code Crim. Proc. Ann. art. 38.37, § 2-a(1); *Belcher v. State*, 474 S.W.3d 840, 847 (Tex. App.—Tyler 2015, no pet.).

Once a Rule 403 objection is made, the trial court has no discretion whether to engage in the balancing test required by that rule. *Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997). However, the trial court is not required to place any findings it makes or conclusions it draws on the record when engaging in the balancing test, and the trial court is presumed to have engaged in the required balancing test once Rule 403 has been invoked. *Id.*

Regarding the first factor in the balancing test, evidence of a separate sexual offense against a child admitted under article 38.37, section 2(b), the trial court could have concluded the evidence is probative of a defendant's character or propensity to

17

commit sexual assaults on children. *Dies v. State*, 649 S.W.3d 273, 285 (Tex. Crim. App. 2022) (citing *Bradshaw v. State*, 466 S.W.3d 875, 883 (Tex. App.—Texarkana 2015, pet. ref'd)). The similarities between the abuse A.M.-H. suffered and the abuse T.G. and M.B. suffered was relevant and probative of Vanarsdale's character or propensity to commit similar offenses with children around the same age and same gender as T.G. and M.B. Additionally, A.M.-H. and M.B. knew each other. The first factor weighs strongly in favor of admission.

As for the second factor, the State's need for the evidence, we note that the State relied on video evidence of the abuse against T.G., but T.G. did not testify at trial, and there was no corroborating eyewitness testimony or physical evidence of the alleged abuse of M.B. and T.G. We conclude the second factor weighs in favor of admission.

As for the third factor, evidence of extraneous sexual bad acts is inflammatory by its very nature and may be prejudicial. *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013). But the potential for the challenged evidence to be inflammatory and prejudicial was diminished in this case by the fact that the acts committed against A.M.-H. were no more serious than the acts committed against T.G. and M.B. *See Robisheaux v. State*, 483 S.W.3d 205, 220 (Tex. App.—Austin 2016, pet. ref'd). That said, we conclude, based on the record, this factor weighs slightly against admission.

18

Considering the fourth factor, the ultimate issue at trial was whether Vanarsdale committed the offenses against T.G. and M.B. as alleged in the indictments. When Minchew and Chappell testified as to the acts against A.M.-H., the trial court mitigated the tendency of the extraneous offense evidence to confuse or distract the jury from the main issues at trial by providing the jury with a limiting instruction regarding an extraneous offense. The jury is presumed to have followed the court's instructions. *Resendiz v. State*, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003). The fourth factor weighs in favor of admission.

Regarding the fifth factor, the challenged evidence was neither scientific nor technical in nature, and it pertained to matters which could easily be understood by a jury. *See Robisheaux*, 483 S.W.3d at 220-21. We conclude the fifth factor also weighs in favor of admission.

Turning to the sixth factor, the extraneous offense testimony did not comprise a substantial part of the trial in terms of time and number of witnesses. Therefore, we conclude this factor also weighs in favor of admission.

Here, the trial court, after balancing the Rule 403 factors, could have reasonably concluded that the probative value of the evidence in question was not substantially outweighed by the danger of unfair prejudice. Accordingly, we find that the trial court did not abuse its discretion in admitting the extraneous offense evidence. *Devoe*, 354 S.W.3d at 469. Because we find no error, we need not

19

determine whether the alleged error was harmful. *See* Tex. R. App. P. 44.2(b). We overrule Vanarsdale's second issue.

Admission of Contents of Electronic Devices

In his third issue, Vanarsdale complains that the trial court erred by allowing Investigator Jeffery Chappell to testify as an expert regarding the contents of three electronic devices since Chappell was not the individual who extracted the data from the devices. Because Chappell did not perform the extraction, Vanarsdale argues that "there was no evidence presented that the extractions were the type that experts in the field would reasonably rely on" under Texas Rules of Evidence 702 and 703 and the evidence was inadmissible.

Jeffery Chappell is the Director of the Digital Forensic Unit for the ICAC Division of the Montgomery County District Attorney's Office. Chappell performed a device extraction on a 16 gigabyte USB flash drive belonging to Vanarsdale. A task force officer from the Department of Homeland Security named Cody Hukill performed extractions on three of the phones seized by law enforcement. Chappell testified that Hukill currently is in training for the Health and Human Services as a special agent for their Office of Inspector General and that it is not unusual for an investigator to perform an extraction and then become employed with another agency. Chappell explained that law enforcement uses Cellebrite or another program to extract the information from the device and that law enforcement can create

20

reports that include a written and visual depiction of the data found on the device. If another analyst performs the initial extraction, then another forensic analyst can review it. Chappell explained:

> One of the main principles of forensics is to make sure whatever we do, whether an extraction or an analysis, is that, that extraction is No. 1, verifiable and No. 2, repeatable. We should be able to verify that the data is correct, that it hasn't been altered or changed, and I should be able to use the same processes and get the same results at the end.

Chappell testified that he reviewed the extractions from Hukill. Chappell verified that the work Hukill had done on the other devices was correct. Outside the jury's presence, Vanarsdale raised an authentication objection to the extractions performed on State's Exhibits 17, 18, and 19–the Alcatel and Samsung phones on which Hukill performed the extractions. Vanarsdale objected to the extractions based on Chappell's lack of personal knowledge:

> I believe Investigator Chappell testified he was not the individual who performed these extractions, and therefore, does not have personal knowledge of how those extractions were done. I understand that he testified that he did review them, but he has not testified that he was there or that he was the one that did them. So, as to those three devices, those are my objections.

The State responded that Chappell testified that the work has to be reproducible, that Chappell followed standard procedure, and that he formed his own independent conclusion about the extractions in this case. The trial court overruled the objection.

21

To preserve error regarding the admission of evidence, a defendant must lodge a timely and specific objection. "The purpose of requiring the objection is to give to the trial court or the opposing party the opportunity to correct the error or remove the basis for the objection." *Martinez v. State*, 22 S.W.3d 504, 507 (Tex. Crim. App. 2000) (citation omitted); *see also* Tex. R. App. P. 33.1(a). A point of error on appeal must also match the objection made at trial. *Clark v. State*, 365 S.W.3d 333, 339-40 (Tex. Crim. App. 2012) (noting that record did not show the trial court understood appellant's evidentiary objections to be a constitutional due process complaint and due process complaint was forfeited). Consequently, "'[a]n objection stating one legal theory [at trial] may not be used to support a different legal theory on appeal.'" *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (quoting *Johnson v. State*, 803 S.W.2d 272, 292 (Tex. Crim. App. 1990)) (other citations omitted).

At trial, Vanarsdale objected on the basis of Chappell's lack of personal knowledge. His objection was that since Chappell did not perform the extractions of the three identified cellular devices and was not present when the extractions were performed, he did not have personal knowledge of how the extractions were done. On appeal, Vanarsdale makes a reliability complaint. He argues there was no evidence that the extractions were the type that experts in the field would rely on. That said, we conclude that the trial court properly overruled Vanarsdale's objection. We review a trial court's ruling on the admission of evidence under an abuse-of-

22

discretion standard of review. *Gonzalez v. State*, 616 S.W.3d 585, 594 (Tex. Crim. App. 2020). A trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *De La Paz*, 279 S.W.3d at 343-44 (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)); *State v. Mechler*, 153 S.W.3d 435, 439-40 (Tex. Crim. App. 2005). If the trial court's decision is correct on any theory of law applicable to the case, we will uphold the decision. *De La Paz*, 279 S.W.3d at 344; *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002).

A trial court's admission or exclusion of expert testimony is governed by Texas Rules of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

Tex. R. Evid. 702. "Facts or data underlying expert opinion can come from three sources: (1) personal knowledge, (2) facts or data made known to the expert at trial, or (3) inadmissible facts or data so long as they are the kind on which an expert in the field would reasonably rely." *Null v. State*, 690 S.W.3d 305, 311-12 (Tex.

23

Crim. App. 2024) (citing Tex. R. Evid. 703). "[E]xperts need not have first-hand knowledge of the facts or data to form an opinion." *Id.* at 314. "An expert may base an opinion on facts in the case that the expert has been made aware of…[or] reviewed…." Tex. R. Evid. 703. Although Chappell did not, in so many words, testify that data extractions such as those performed by Hukill were "the kind on which an expert in the field would reasonably rely," he did testify that it sometimes happens that one investigator will use data extracted by another investigator who no longer works for the same agency. Moreover, Chappell testified that he reviewed Hukill's work and determined the work had been performed correctly. Therefore, even if Vanarsdale's personal-knowledge objection could be construed as an objection that the facts or data of which Chappell was made aware were not reasonably reliable, the objection was properly overruled by the trial court. We overrule Vanarsdale's third issue.

Lesser-Included Offense

In Vanarsdale's fourth issue, he complains that in trial cause number 23-10-15062-CR, aggravated sexual assault of a child, (appellate cause number 09-24-00375-CR), the trial court erred by denying his request to instruct the jury on the lesser offense of indecency with a child by contact. The indictment for aggravated sexual assault of a child alleged that Vanarsdale:

[O]n or about May 01, 2018, and before the presentment of this indictment, in the County and State aforesaid, did then and there intentionally or

24

knowingly cause the defendant's sexual organ to contact the sexual organ of M.B., a child who was then and there younger than 6 years of age[.]

During the charge conference, Vanarsdale requested that the charge include the following instruction:

VII. Application of Law to the Lesser Included Offense of Indecency with a Child by Contact to This Case

Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about May 1, 2018, in Montgomery County, Texas, the Defendant, JOSHUA AARON VANARSDALE, did then and there, with intent to arouse or gratify the sexual desire of the Defendant, engage in sexual contact with M.B. by touching the genitals of M.B., a child younger than 17 years of age, with Defendant's hand, you will find the defendant guilty of the lesser-included offense of Indecency with a Child. If you do not so find from the evidence beyond a reasonable doubt, or if you have reasonable doubt thereof, you will acquit the Defendant and say by your verdict "Not Guilty[.]"

In response, the State argued that under the facts of this case, indecency by contact is not a lesser-included offense of the indicted offense of aggravated sexual assault of a child because it would require different manner and means. Vanarsdale responded that, "The evidence that would be required to establish indecency would, also, be established by the same facts as in the aggravated assault." The trial court denied Vanarsdale's request.

When reviewing allegations of charge error, we first determine whether the trial court erred. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (citation omitted). Only if we find error in the charge do we then determine whether

25

it resulted in harm sufficient to require reversal. *See id.* at 744. As explained below, we do not find error in the charge, so we need not analyze harm.

Our analysis of whether the trial court erred in denying Vanarsdale's requested instruction is controlled by *Hernandez v. State*, 631 S.W.3d 120 (Tex. Crim. App. 2021). Hernandez was tried for aggravated sexual assault of a child. *Id.* at 122. Evidence at trial indicated Hernandez penetrated a child's mouth with his penis. *Id.* Hernandez denied this but admitted he touched the child's vagina (over her clothes) with his hand and may have touched the child's torso with his penis, conduct which constitutes indecency with a child, but not aggravated sexual assault of a child. *Id.*; *compare* Tex. Penal Code Ann. § 21.11(a)(1), (c)(1), (2) (indecency with a child), *with* § 22.021(a)(1)(B), (2)(B) (aggravated sexual assault). The trial court denied Hernandez's request that the charge include instructions regarding the lesser offense of indecency with a child. Hernandez was convicted of aggravated sexual assault, and the Court of Criminal Appeals affirmed the conviction, explaining:

> [A] separate offense—even if it is a lesser offense—is not an included offense. More specifically, an allegation that a defendant penetrated a child's mouth with his penis does not include claims that he touched the child's torso with his penis or touched her vagina with his hand. Although they are lesser, those are not included offenses because they are separate crimes for which the defendant could be prosecuted in addition to the greater, charged offense.

*Hernandez*, 631 S.W.3d at 122.

26

When the State uses one act to prove both offenses, courts have held indecency with a child to be a lesser-included offense of aggravated sexual assault. *See, e.g., Evans v. State*, 299 S.W.3d 138, 143 (Tex. Crim. App. 2009); *Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998). In contrast, when the evidence supporting an indecency charge is distinct from that supporting the charge of aggravated sexual assault, the indecency charge will not be a lesser-included offense of the aggravated sexual assault, and both could be prosecuted without violating the double-jeopardy clause. *See, e.g., Bottenfield v. State*, 77 S.W.3d 349, 358 (Tex. App.—Fort Worth 2002, pet. ref'd) (explaining that evidence showed appellant touched the victim inappropriately in two separate manners, supporting convictions for both aggravated sexual assault and indecency).

Vanarsdale was indicted for allegedly intentionally or knowingly causing his sexual organ to contact M.B.'s sexual organ when M.B. was under 14 years of age, conduct described as "aggravated sexual assault" and proscribed by section 22.021 of the Texas Penal Code. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(iii), (2)(B). The court's charge asked the jury whether Vanarsdale was guilty of that offense. What Vanarsdale asked the trial court to do was to instruct the jury to find whether Vanarsdale was guilty of a separate offense based on different conduct: touching M.B.'s genitals with his hand when M.B. was under 17 years of age, and with the intent to arouse or gratify Vanarsdale's sexual desire, an offense described as

"indecency with a child" and proscribed by section 21.11 of the Penal Code. *See* Tex. Penal Code Ann. § 21.11(a)(1), (c)(1).

Because indecency with a child is a second-degree felony, it is a lesser offense when compared to the greater offense of aggravated sexual assault, a first-degree felony. However, under the facts of this case, it is not a lesser-included offense, because it is not an included offense. There is evidence in the record that Vanarsdale touched M.B.'s genitals with his hand; there is also evidence Vanarsdale caused his sexual organ to contact M.B.'s sexual organ. These are two separate acts proscribed by two separate statutes under which the State may have prosecuted Vanarsdale for two separate offenses. Separate acts of contact are separate offenses, and separate offenses are not included offenses. *Hernandez*, 631 S.W.3d at 124-25. "In short, different body parts mean different crimes." *Id.* at 124. "[A] defendant is not entitled to an instruction on a lesser offense that is extraneous to—rather than included in— the offense charged. He 'cannot foist upon the State a crime the State did not intend to prosecute' by means of an instruction on a lesser offense." *Id*. at 123 (quoting *Campbell v. State*, 149 S.W.3d 149, 157 (Tex. Crim. App. 2004) (Keller, P.J., concurring)). Because the trial court did not err in refusing to submit Vanarsdale's proposed instruction, we overrule Vanarsdale's fourth issue.

28

Court Costs

In his fifth issue, Vanarsdale argues that the trial court waived all court costs, including the "Reimbursement Fees," and the judgment in trial cause number 23-04-04866-CR should be modified so the fine and costs are waived in full.

The trial court waived court costs at the formal sentencing after Vanarsdale requested that the trial court consider waiving his court costs. The judgments in each cause number have a handwritten notation from the trial court where the court costs are waived. The judgment in cause number 23-04-04866-CR does not include a box marked for "[t]he fine and court costs shall be waived in full" as in the other cause numbers. Each judgment includes reimbursement fees.

Texas Code of Criminal Procedure article 102.073 provides:

(a) In a single criminal action in which a defendant is convicted of two or more offenses or of multiple counts of the same offense, the court may assess each court cost or fee only once against the defendant.

(b) In a criminal action described by Subsection (a), each court cost or fee the amount of which is determined according to the category of offense must be assessed using the highest category of offense that is possible based on the defendant's convictions.

Tex. Code Crim. Proc. Ann. art. 102.073(a), (b). Courts of appeals have the authority to modify judgments. *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). Since the trial court prosecuted Vanarsdale for all seven offenses in a single criminal action, we sustain Vanarsdale's fifth issue and modify the judgment in trial cause number 23-04-04866-CR to reflect that the fine and court costs are waived in full

29

and to delete the reimbursement fee. We modify the judgments in trial cause numbers 23-04-04866-CR, 23-04-04868-CR, 23-04-04870-CR, 23-04-04871-CR, 23-04-04872-CR, and 23-10-15062-CR to delete the reimbursement fees.

Conclusion

We affirm the judgment in trial cause number 23-03-04686-CR. We affirm the judgment in trial cause number 23-04-04866-CR as modified to reflect that the fine and court costs are waived in full and to delete the reimbursement fee. We affirm the judgments in trial cause numbers 23-04-04868-CR, 23-04-04870-CR, 23-04-04871-CR, 23-04-04872-CR, and 23-10-15062-CR as modified to delete the reimbursement fees.

AFFIRMED AS MODIFIED.

KENT CHAMBERS
Justice

Submitted on April 28, 2026
Opinion Delivered June 17, 2026
Do Not Publish

Before Golemon, C.J., Wright and Chambers, JJ.

30